UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CALIFORNIA EARTHQUAKE AUTHORITY,

        Plaintiff,

  v.

METROPOLITAN WEST SECURITIES, LLC; WACHOVIA BANK, N.A.; and DOES 1 through 25,

        Defendants.
_____/

Civ. No. S-10-291 FCD/GGH

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    This matter is before the court on the motion of plaintiff California Earthquake Authority ("CEA," "the Authority," or "plaintiff") to disqualify defendants' counsel Munger, Tolles & Olson, LLP ("Munger").  Defendants Metropolitan West Securities, LLC ("MWS") and Wachovia Bank, N.A. ("Wachovia") (collectively, "defendants") oppose the motion.

    The court heard oral argument on the motion on April 23, 2010.  By this order, it now renders its decision, granting

1

plaintiff's motion for the reasons set forth below.

**BACKGROUND**

On December 31, 2009, CEA filed the complaint in this action, alleging claims for breach of contract, breach of fiduciary duty, constructive fraud, and unfair business practices against defendants.  In conjunction with its complaint, CEA filed a motion to disqualify Munger as defendants' counsel on the grounds that Munger was either improperly (1) simultaneously representing parties with adverse interests or (2) representing defendants when Munger had a previous relationship with CEA, wherein CEA disclosed certain confidential information to Munger which bears a direct and substantial relationship to the present action.[1]

On August 26, 2002, CEA's outside counsel, Richard Wolf ("Wolf"), met with Richard Drooyan ("Drooyan"), a partner at Munger.  The meeting lasted approximately three hours.  While the exact nature of the conversation and what information CEA shared with Drooyan is disputed between the parties, it involved a discussion about CEA's desire to develop a compliance program for the Authority; Wolf contacted Drooyan because many corporate compliance systems were based in part on the Federal Sentencing Guidelines, and Wolf believed Drooyan's extensive experience in corporate compliance and federal criminal law would assist the Authority in designing a compliance program.  (Drooyan Decl.,

---

[1] The original complaint and motion to disqualify were filed in Sacramento County Superior Court.  Defendants removed this action to this court based on diversity jurisdiction on February 4, 2010. (Defs.' Notice of Removal, filed February 4, 2010.)

2

filed April 9, 2010 [Docket #16]; Wolf Decl., filed April 19, 2010 [Docket #19].)  The following day, Drooyan received what he termed a "retainer agreement" from CEA's general counsel, which Drooyan signed and later returned to CEA on October 11, 2002. (Drooyan Decl. ¶ 5.)  Thereafter, CEA signed the "retainer agreement" which is titled "Agreement" and provided a fully executed copy to Drooyan (hereinafter referred to as the "Agreement").  (Id.)

By its express terms, the "Agreement governs the terms and conditions of all work [Munger] has performed (if any) and will perform for the Authority."  (Marshall Decl., filed February 24, 2010 [Docket #12], Ex. 1, ¶ 2.0.)  Munger specifically agreed that:

> for and in consideration of the Authority's promises, agreements, and stipulations and under the conditions stated in this Agreement, [it] will provide legal representation to the Authority as directed by the Authority's Contract Manager.

(Id. ¶ 1.0.)  And further agreed that:

> [Munger] will represent the Authority and its Governing Board, by providing legal advice, legal representation, and other legal services in connection with issues regarding a proposed compliance program for the Authority, related legal issues, and other issue areas the Authority may face in the conduct of its business.

(Id. ¶ 1.1.)

The parties also agreed that the term of the Agreement was "of no defined duration," and that either party could terminate the contract by giving the other party 30 days' advance written notice.  (Id. ¶¶ 2.0, 7.1.)  However, CEA could terminate the agreement with *no* notice by delivering a "written notice of termination" specifying the effective date of the termination.

1  (Id. ¶ 7.1.)  The contract further provided all notices
2  "permitted or required" must be in writing, and that no
3  alterations of the terms of the Agreement will be valid "unless
4  made in writing and signed by both parties."  (Id. ¶¶ 10.0,
5  12.0.)

6       Finally, Munger agreed to provide legal services to CEA
7  pursuant to the terms of the Agreement for a maximum compensation
8  of $100,000 per calendar year. (Id. ¶ 3.0.)

9       The parties do not dispute that Munger has not done any work
10 on behalf of CEA since the initial three hours of work on August
11 26, 2002.  Nor do the parties dispute that neither CEA or Munger
12 has terminated the Agreement according to the termination
13 provisions.

14       In 2008, Munger was contacted by Wachovia about
15 representing it in a dispute with CEA.  (Rutten Decl., filed
16 April 9, 2010 [Docket #16], at ¶ 2.)  On January 19, 2009, Munger
17 submitted a brief on behalf of Wachovia in a mediation with CEA.
18 (Id. ¶ 3.)  Four days later, Munger received a letter from CEA in
19 which CEA asserted that Munger and CEA had an existing attorney-
20 client relationship and Munger's representation of Wachovia was
21 inconsistent with that relationship.  (Marshall Decl., Ex. 2.)
22 While the letter did not request Munger's immediate withdrawal
23 from representing Wachovia in the mediation the following week,
24 CEA stated that it was not waiving its rights with respect to the
25 conflict.  (Id.)  The mediation was not successful, and CEA filed
26 this action.
27 ///
28 ///

**ANALYSIS**

CEA argues that Munger must be disqualified on two alternative bases.  First, CEA argues it is still a client of Munger and Munger's representation of defendants is an improper concurrent representation of parties with adverse interests, in breach of Munger's duty of loyalty to CEA.  Second, CEA argues that, even if CEA and Munger no longer have an attorney-client relationship, CEA disclosed confidential information to Munger which is substantially related to this action and, therefore, Munger's representation of defendants violates Munger's duty of confidentiality to a former client.  In its written opposition, Munger referred to a "purported attorney-client relationship" with CEA that was terminated long ago but at oral argument, Munger insisted that an attorney-client relationship never existed between Munger and CEA.  Munger also maintains that CEA never shared confidential information that has any bearing on this case.  Further, Munger argues that CEA's motion to disqualify is untimely as CEA was aware of any alleged conflict in January of 2009 but did not attempt to disqualify Munger until December 31, 2009 when it filed the complaint and motion to disqualify in state court.

**I.   Munger and CEA Entered into an Attorney-Client Relationship.**

Aa noted above, Munger's opposition to the motion evolved since filing its written opposition to the motion.  In its written opposition, Munger argued the "purported attorney-client relationship" with CEA "necessarily terminated" long before Munger began its representation of defendants.  According to the opposition, the lack of activity between the parties effectively

5

terminated the "purported" relationship under controlling California law.  However, at oral argument, Munger strongly asserted that there was *never* an attorney client relationship between Munger and CEA to terminate as there was never an agreement that created such a relationship.  Instead, Munger claimed that the Agreement, undisputedly executed between the parties, was merely evidence of Munger's willingness to enter into an agreement to become CEA's attorney at some later time.  (Transcript of Oral Argument, on April 23, 2010 ["TOA"],[2] at 7 [stating that by the Agreement, Munger "volunteered . . . to be [CEA's] attorneys but [Munger] was never given any legal work to do pursuant to the [Agreement]" and thus no relationship was formed; TOA at 8 [indicating Munger believed the Agreement was "a contract to consider representing [CEA]"]; TOA at 14 [stating that in Munger's counsel's view, the Agreement "did not" create an attorney-client relationship with CEA].)  When asked directly by the court whether Munger was *ever* the attorney for CEA, defendants' counsel responded: "No.  There's only two ways you're the attorney, to be given legal work for which you [are paid] or paid a retainer."  (TOA at 7.)  Munger provided no legal authority for this declaration of Munger's obligation to CEA, though it appears at odds with both the terms of the Agreement and the applicable law.

///

---

[2]   Because the parties did not request preparation of an official transcript, one was not prepared and filed by the court reporter.  As such, the court cites herein to an unofficial/rough transcript from the hearing, although pagination would likely be closely akin to the official transcript.

"An attorney's duty to his or her client depends on the existence of an attorney-client relationship. If that relationship does not exist, the fiduciary duty to a client does not arise. Except for those situations where an attorney is appointed by the court, the attorney-client relationship is created by some form of contract, express or implied, formal or informal." <u>Nichols v. Keller</u>, 15 Cal. App. 4th 1672, 1684 (1993); <u>see</u> <u>also</u> <u>Responsible Citizens v. Superior Court</u>, 16 Cal. App. 4th 1717, 1732-33 (1993).

At oral argument, Munger posited that the Agreement was a confusing nullity and that the court must look to the *conduct* of the parties to determine whether an implied contract, and therefore an attorney-client relationship, exists. <u>See</u> Cal. Civ. Code § 1621 ("An implied contract is one, the existence and terms of which are manifested by conduct."). However, in doing so Munger asks the court not only to disregard the express terms of the written agreement with CEA but to do so in order that Munger can proceed to represent other parties, MWS and Wachovia, in a lawsuit *against CEA*. The facts in this case do not nor should they yield such a result.[3]

The Agreement states unequivocally that "[Munger], for and in consideration of the Authority's promises, agreements, and stipulations and under the conditions stated in this Agreement, will provide legal services to the Authority as directed by the Authority's Contract Manager." (Marshall Decl., Ex. 1, ¶ 1.0.)

---

[3] Indeed, CEA argues that the very issues that CEA discussed with Munger are in fact issues in CEA's lawsuit against defendants, whom Munger represents.

The clarity of this professional obligation only became obfuscated when Munger assumed that the passage of time and inactivity would absolve Munger of its own failure to abide by the express terms of the Agreement.  Attorneys have a paramount obligation to honor their contractual promises to clients.  Indeed, it is this court's view that a lawyer's contractual obligations to his client should be read expansively not parsed to favor the lawyer.  See Morrison & Forester LLP v. Momentous.CA Corp., No. C-07-6361 EMC, 2008 WL 648481, *8-9 (N.D. Cal. March 5, 2008) (recognizing that ambiguities in contracts between attorneys and their clients should be "strictly interpreted against the attorney" and such contracts should be construed in the light most "favorable to the interests of the client").  Thus, where a written agreement between an attorney and his client establishes mutual attorney-client obligations, including express terms of termination, that attorney-client relationship must be honored by the attorney until and unless it is terminated pursuant to the terms of the contract.[4]

**II.   The Attorney-Client Relationship has not been Terminated.**

The next inquiry is whether Munger should be disqualified because CEA is a current or former client.

///

///

---

[4] At oral argument, Munger also argued that the contract lacks consideration.  This is a dubious proposition considering that CEA paid Munger for the three hour meeting between Wolf and Drooyan according to the terms of the Agreement, which commenced August 1, 2002.  Indeed, Munger admitted at oral argument that the reason CEA was billed was because "Mr. Drooyan gave them legal advice."  (TOA at 9.)

**A.   Termination Based on Conduct of Parties**

Munger does not argue that it terminated the Agreement by giving CEA written notice, as contemplated by the terms of the contract prior to Munger's representation of defendants. Rather, Munger argues, in its written opposition, that the attorney-client relationship terminated prior to 2008 since there was no ongoing, mutual relationship between Munger and CEA, including any activities conducted by Munger on behalf of CEA since August 26, 2002.

For this proposition, Munger relies on Worthington v. Rusconi, 29 Cal. App. 4th 1488 (1994), Crouse v. Brobeck, Phleger & Harrison, 67 Cal. App. 4th 1509 (1998), and Truong v. Glasser, 181 Cal. App. 4th 102 (2009). According to Munger, this court should apply the reasoning of these cases and find that any attorney-client relationship with CEA terminated because Munger ceased doing legal work for the Authority after August 26, 2002.

This argument is without merit. These cases simply are inapplicable and do not control the facts of this case. Worthington, Crouse, and Truong address *the tolling of the statute of limitations for a legal malpractice claim*. As an example, the Truong court held, interpreting California Code of Civil Procedure § 340.6(a)(2), that: "if the attorney continues to represent the client regarding the specific subject matter in which the alleged wrongful act or omission occurred, the statute will not begin to run until the attorney ceases representing the client in connection with that subject matter." 181 Cal. App. 4th at 111 (citing Crouse, 67 Cal. App. 4th at 1535-36). The test Munger urges, that "[c]ontinuity of representation

9

ultimately depends . . . on evidence of an ongoing mutual relationship and of activities in furtherance of the relationship," applies in order to determine whether a legal malpractice claim survives the one year statute of limitations. Worthington, 29 Cal. App. 4th at 1498. The courts above determined that critical to *that analysis* was whether there was evidence that the attorney continued to represent the client on the specific subject matter that was at issue in the legal malpractice claim.

An analysis to determine whether a legal malpractice claim survives, however, is irrelevant to the facts of this case. Here, the attorney-client relationship is predicated on the application of *contract law* not the tolling of the statute of limitations to preserve a legal malpractice claim. See Responsible Citizens, 16 Cal. App. 4th at 1732-33 ("the attorney-client relationship is created by some form of contract, express or implied, formal or informal"); Purdy v. Pacific Automobile Ins. Co., 157 Cal. App. 3d 59, 75 (1984) ("It is elementary that the relationship between a client and his retained (or non-court-appointed) counsel arises from a contract, whether written or oral, implied or expressed."). In this case, the parties have an express written contract setting forth the terms of the attorney-client relationship. That contract specifically provides that it may be terminated *only* by written notice. (Marshall Decl., Ex. 1, §§ 7.1., 10.0, 12.0.) No party gave written notice to terminate pursuant to the plain terms of the Agreement. The Agreement has not been terminated and CEA

remains Munger's client.[5]

**B.   Termination Based on Indefinite Duration**

Munger further argues in its written opposition that the contract terminated because "[in] construing contracts . . . which contain *no express terms of duration*," the duration is implied "from the nature of the contract and the circumstances surrounding it." Consolidated Theaters, Inc. v. Theatrical Stage Employees Union Local 16, 69 Cal. 2d 713, 725 (1968) (emphasis added). Munger argues the nature of this contract and the circumstances surrounding it show that the Munger/CEA attorney-client relationship ended long ago by virtue of the inaction of the parties and the lack of a specified duration of performance.

In Consolidated Theaters, the Court "observed that the memorandum *makes no reference* to the duration of the agreement." Id. at 724 (emphasis added). As a result, the Court contemplated three possibilities lower courts will face in determining the duration of such a contract. Id. at 724-25. First, a court must determine whether the contract contains an express term of duration. Id. at 724 (The Court approvingly cites Judge Learned Hand's statement: "Had the parties expressed the intention to make a promise for perpetual maintenance, we should, of course, have nothing to say." Town of Readsboro v. Hoosac Tunnel & W. R. Co., 6 F.2d 733, 735 (2d. Cir. 1925).). If, and only if, no express provision as to duration exists, the court must determine whether the intention of the parties as to duration can

---

[5] At no time has Munger explained why it never provided a written notice of termination to CEA--hardly a burdensome task.

11

be implied from the nature of the contract and the circumstances surrounding it." Id. at 725. Lastly, if the term of duration cannot be implied from the nature and circumstances of the contract, the court "implies that the term of duration shall be at least a reasonable time, and that the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." Id. at 727-28.

Here, the Agreement *does make reference* to the contract's duration. It states that the "term of this Agreement commences August 1, 2002, and is no defined duration." (Marshall Decl., Ex. 1, ¶ 2.0.) The Agreement leaves it up to the parties to decide when the Agreement terminates. This is neither uncommon nor unenforceable, as Munger suggests. Contracts including express terms of indefinite duration have long been held to be valid in California. See, e.g., Great Western etc. v. J.A. Wathen D. Co., 10 Cal. 2d 442 (1937); Zimco Restaurants v. Bartenders Union, 165 Cal. App. 2d 235, 237-38 (1958) ("The general California rule appears to be that a contract is not fatally defective merely because it does not specify a time presently definite for its termination."). Following Consolidated Theaters, California courts enforced express terms of indefinite duration without looking to the nature of the contract and the circumstances surrounding it. See Zee Med. Distrib. Ass'n v. Zee Med., Inc., 80 Cal. App. 4th 1, 10 (2000) ("We conclude that under controlling decisions of the California Supreme Court, such express contractual terms for indefinite periods of time are valid in this state."). As such, the CEA/Munger contract duration must be read to continue until a

party terminates the Agreement by written notice.[6]

Neither Munger nor CEA gave written notice of termination before Munger undertook representation of defendants in the present litigation against CEA. Nor were the terms of the Agreement modified as required in writing. Munger is thus left with the untenable position it presented at oral argument: The court should simply void the express terms of an otherwise valid written agreement because compliance with the written agreement is trumped by the passage of time, inaction, and the practicalities of the legal profession. The court finds this argument without merit and further finds that Munger simultaneously represents CEA and defendants, who clearly have interests adverse in this lawsuit.

### III. **Munger Must be Disqualified from Representing Defendants.**

In determining motions for disqualification, the court applies the applicable state law. In re County of Los Angeles, 223 F.3d 990, 994 (9th Cir. 2000); E.D. Cal. L.R. 83-180(e) (adopting California's standards of professional conduct and providing that the American Bar Association's Model Rules of Professional Conduct may be considered for guidance). "Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." UMG Recordings Inc. v. MySpace, Inc., 526 F. Supp. 2d 1046, 1058

---

[6] Munger argues that ¶ 7.1 of the Agreement anticipates an alternate method of termination because of the use of the phrase "*can* terminate." This argument is not germane in light of ¶ 12.0 of the Agreement which provides that all notices, *whether permissive or required*, must be in writing. (Marshall Decl., Ex. 1, ¶ 12.0.)

...

(C.D. Cal. 2007) (citations omitted).

When an attorney simultaneously represents two seemingly adverse parties, the court must question whether the attorney can ever impartially preserve its duty of loyalty to both parties simultaneously. Flatt v. Superior Court, 9 Cal. 4th 275, 284 (1994). There are a few rare instances when simultaneous representation is permissible, despite an actual conflict of interest, but generally "the rule of disqualification in simultaneous representation cases [involving actual conflicts of interest] is a per se or 'automatic' one," regardless of whether any confidential information has been shared. Id. (citing Cinema 5, Ltd. v. Cinerama Inc., 8 F.2d 1387 (2d Cir. 1976)); see also Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp., 36 Cal. App. 4th 1832, 1840 (1995) ("Where the duty of loyalty applies, it requires a per se, or automatic disqualification, in all but a few instances.").

As discussed above, the court finds that Munger simultaneously represents CEA and defendants. It is clear under California law that such simultaneous representation is per se grounds for disqualification in all but a few circumstances, which do not exist here. Cal. Rules Prof. Code § 3-310(C). As such, CEA's motion to disqualify Munger from representing defendants must be GRANTED.[7]

///

---

[7] Because the court finds that Munger must be disqualified from representing defendants, the court need not consider CEA's alternative argument that Munger is representing a successive client in a matter which is substantially related to the matters for which CEA hired Munger.

**IV.   CEA's Motion to Disqualify is Not Untimely.**

Lastly, the court finds that CEA's motion to disqualify is not untimely.  CEA filed the motion to disqualify in state court on December 31, 2009--the very same day the complaint was filed.  There can be no question that this was CEA's very first opportunity to file the motion before the court.  However, Munger argues that because CEA was aware of the conflict since Munger began representing Wachovia in the mediation proceedings, CEA had ample time to request Munger's disqualification but failed to do so.

Munger's argument does not comport with California law.  As an initial matter, it is not clear that delay is a factor that should be taken into account by the court in a situation involving concurrent, as opposed to successive, representation.  State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.,72 Cal. App. 4th 1422, 1433 (1999) ("In *successive* representation situations, there exists a narrow exception to the rules requiring disqualification based on delay." (emphasis added)).  Even if the delay exception applies to cases involving simultaneous representation, such delay is not present in the instant case.  Mere delay is not dispositive in denying a disqualification motion, "[t]he delay must be extreme in terms of time and consequence."  River West, Inc. V. Nickel, 188 Cal. App. 3d 1297, 1311 (1987).  Additionally, delay is measured from the time the complaint is filed, not from when the party first learned of the grounds for disqualification.  See State Farm, 72 Cal. App. 4th at 1434.

///

15

> Here, although [the parties] were taking opposing positions on . . . cases in 1996, the actual complaint was not filed until February 1998. Until the complaint was filed, the trial court could not rule on a motion to disqualify [the firm] under the aegis of the subject action. [Defendant] brought the conflict to [the firm's] attention approximately one month after the complaint was filed. Thus, delay is not a factor in this case.

Id. Because CEA's motion to disqualify was filed simultaneously with the complaint, there can be no question that the motion to disqualify is timely. Cf. River West, 188 Cal. App. 3d at 1300 (motion to disqualify should not have been granted where the motion to disqualify was not filed until 47 months after the moving party's answer was filed).

Moreover, not only is there no delay, defendants have not shown extreme prejudice. Simply losing counsel of one's choice and having to retain new counsel does not qualify as extreme prejudice. In re Complex Asbestos Litigation, 232 Cal. App. 3d 572, 600 (1991). Furthermore, the court notes that defendants cannot be surprised by the instant motion as CEA objected to Munger's representation of defendants since January 2009, indicating its intent to seek disqualification should a lawsuit be filed. When said suit was filed, CEA immediately sought to disqualify Munger as defendants' counsel.

**CONCLUSION**

For the foregoing reasons, CEA's motion to disqualify defendants' counsel is GRANTED. The court will stay the action in its entirety for 45 days to permit defendants to retain new counsel. Upon substitution of new counsel, the parties shall file a joint status (pretrial scheduling) conference statement

1 | within 20 days thereafter.
2 |     IT IS SO ORDERED.
3 | DATED: May 5, 2010.

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE