MICHAEL J. STRUMWASSER (SBN 58413)
FREDRIC D. WOOCHER (SBN 96689)
PATRICIA T. PEI (SBN 274957)
STRUMWASSER & WOOCHER LLP
10940 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
Tel.: (310) 576-1233  Fax: (310) 319-0156
E-mail:  mstrumwasser@strumwooch.com
          fwoocher@strumwooch.com
          ppei@strumwooch.com

Attorneys for Plaintiff
*California Earthquake Authority*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA EARTHQUAKE AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN WEST SECURITIES, LLC; WACHOVIA BANK, NATIONAL ASSOCIATION; and DOES 1-25,<br><br>Defendants. | CASE NO. 2:10-CV-00291-MCE-GGH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF CALIFORNIA EARTHQUAKE AUTHORITY'S MOTION TO QUASH SUBPOENA *DUCES TECUM***<br><br>Date:        July 19, 2012<br>Time:        10:00am<br>Courtroom:   9 (Hon. Gregory G. Hollows) |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS....................................................................................1

III.    ARGUMENT ........................................................................................................5

        A.      Work Product Immunity................................................................................6

        B.      Attorney-Client Privilege ...........................................................................11

IV.     CONCLUSION ...................................................................................................13

*California Earthquake Authority v. Metropolitan West Securities LLC et al.*
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH SUBPOENA *DUCES TECUM*
Case No. 2:10-CV-00291-MCE-GGH

# TABLE OF AUTHORITIES

## Federal Cases

*Carrasco v. Campagna,*

    No. C-03-4727 SBA (EMC), 2007 WL 81909, at *3 (N.D. Cal. Jan. 9. 2007)................... 10

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist. (Fru-Con I),*

    No. S-05-0583 LKK GGH, 2006 WL 2050999 at *4 n.3 (E.D. Cal. July 20, 2006) ... 7, 8, 12

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist. (Fru-Con II),*

    No. S-05-0583 LKK GGH, 2006 WL 2255538 at *3 n.3 (E.D. Cal. Aug. 7, 2006) .............. 7

*Holmgren v. State Farm Mut. Auto. Ins. Co.,*

    976 F.2d 573 (9th Cir. 1992) ...................................................................................... 10

*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*

    357 F.3d 900 (9th Cir. 2004) ................................................................................... 6, 9

*People ex rel. Wheeler v. S. Pac. Transp. Co.,*

    No. Civ. S-92-1117 LKK GGH, 1993 WL 816066, *5 (E.D. Cal. Sept. 2, 1993) ............. 8, 9

*Pittman v. County of San Diego,*

    No. 09-CV-1952-WQH (WVG), 2010 WL 4570252, at *5 (S.D. Cal. Nov. 3, 2010) ......... 10

*United States v. Adlman,*

    134 F.3d 1194 (2d Cir. 1998)...................................................................................... 6

*U.S. Inspection Svcs., Inc. v. NL Engineered Solutions, LLC,*

    268 F.R.D. 614 (N.D. Cal. 2010)................................................................................. 7

*Visa U.S.A. v. First Data Corp.,*

    No. C-02-1786JSW(EMC), 2004 WL 1878209 at *7 (N.D. Cal. Aug. 23, 2004) ................. 9

## State Cases

*City & County of S.F. v. Superior Court,*

    37 Cal.2d 227 (1951) .......................................................................................... 11, 12

*People v. Meredith,*

    29 Cal.3d 682 (1980) ............................................................................................. 12

ii

*Rodriguez v. Superior Court,*

    14 Cal.App.4th 1260(1993) ....................................................................................... 11

*Suezaki v. Superior Court,*

    58 Cal.2d 166 (1962) ............................................................................................... 12

*Zurich Am. Ins. Co. v. Superior Court,*

    *155* Cal.App.4[th] 1485 ............................................................................................ 11

**Federal Statutes**

Fed. R. Civ. P.,

    § 26(b)(3) ................................................................................................................. 6

    § 45(c)(3) .................................................................................................................. 1

**State Statutes**

Cal. Evid. Code,

    § 952 ................................................................................................................. 11, 12

Cal. Gov. Code,

    § 11126(e)(1) ............................................................................................................ 8

Cal. Ins. Code,

    § 10089.7(*l*) ............................................................................................................ 8

**Miscellaneous**

8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus,

    Federal Practice & Procedure § 2024 (2d ed. 1994) ................................................. 6

I.   **INTRODUCTION**

While litigation is typically a last resort for parties seeking to resolve a dispute, the prospect of litigation often requires a potential plaintiff to begin to prepare for the eventuality of a lawsuit long before a complaint is ever filed.  Both California and federal law protect the efforts of parties and, in particular, their attorneys to responsibly research and pursue the possibility of litigation without having to reveal to an opposing party either their communications with their clients or the work they have produced along the way. It is precisely this information that Defendants Metropolitan West Securities, LLC and Wachovia Bank, National Association (collectively, "Wachovia") now seek to discover through service of a subpoena *duces tecum* seeking certain privileged and protected documents relating to this case from non-party PricewaterhouseCoopers LLP ("PwC").  Plaintiff California Earthquake Authority (the "CEA" or the "Authority") therefore brings this motion to quash the subpoena pursuant to FED. R. CIV. P. 45(c)(3) to protect this confidential information from being disclosed.

II.   **STATEMENT OF FACTS**

This action arises from an unlawful investment made by Wachovia on the CEA's behalf, and the subsequent collapse of that investment, which resulted in a loss of over $47 million to the Authority. (*See* Declaration of Daniel P. Marshall III, "Marshall Decl.," Exh. 1 ("Complaint").) The investment was initially made in August of 2007; at the time, Wachovia was the CEA's Financial Advisor and Investment Manager, in which capacity it was responsible for overseeing the Authority's entire asset management structure and providing general financial advice. (*Id.* at ¶ 4.) Wachovia also directly managed several of the CEA's investment accounts and was authorized to invest the money in those accounts at its discretion, provided that those investments complied with the CEA's pre-established, conservative investment policy and all governing statutes. (*Id.* at ¶¶ 4-5.)

On August 8, 2007, Wachovia invested approximately $62.25 million of the CEA's funds in commercial paper issued by Mainsail II LLC ("Mainsail"), a so-called structured investment vehicle–lite ("SIV-lite"). (*Id.* at ¶ 6.) Less than two weeks later, Mainsail breached

1

1  a critical market-value compliance rule, and its assets were frozen. (*Id.* at ¶ 7.) Mainsail

2  ultimately went into receivership, and the CEA lost the majority of its original investment in

3  the restructuring that followed. (*Id.*) It was the first investment loss sustained by the Authority

4  in its history. (*Id.*)

5      Once it became clear that the CEA would not be able to recover most of its investment,

6  the CEA's General Counsel, Daniel P. Marshall III, initiated an inquiry into the nature and

7  causes of the loss. (*Id.* at ¶¶ 8-9.) Mr. Marshall's initial research included consultations with

8  outside counsel as to potential remedies that the CEA might pursue, if indeed it were

9  determined that Wachovia was at fault for the bad investment. (*Id.* at ¶ 11.) Mr. Marshall also

10  contacted independent auditing firm PwC to explore the possibility of commissioning a formal

11  investigation of, and report on, the events leading up to the Mainsail investment. (*Id.* at ¶ 12.)

12  It was envisioned that, through its research, PwC would gather evidence that could later be

13  used to support the complaint the CEA would file in any necessary legal proceedings. (*Id.*)

14      After several months of negotiations, the CEA entered into a contract in early 2008

15  appointing PwC to conduct an audit of the Mainsail investment under the direction and

16  oversight of Mr. Marshall and the CEA's Legal Department. (*Id.* at Exh. 5 ("PwC Contract").)

17  The scope of work to be performed directed PwC to conduct interviews of key CEA staff

18  members and to review the CEA's own internal financial documents and records. (PwC

19  Contract at Attachment 1 ("Engagement Letter"), p.1.) The contract also indicated that PwC

20  should attempt to gather relevant information from outside parties who played a role in the

21  transaction, including Wachovia, Solent Capital Partners (Mainsail's collateral manager), and

22  Merrill Lynch (the broker from whom Wachovia purchased the Mainsail paper), although it

23  was acknowledged that those parties had no obligation to cooperate with or to volunteer

24  information to the investigation. (Engagement Letter at Attachment A ("Scope of Work");

25  Marshall Decl. at ¶ 15.) The final product to be delivered to the CEA would be in the form of a

26  written report, which was to be presented to the CEA's Governing Board. (Engagement Letter

27  at p.4.)

28

*California Earthquake Authority v. Metropolitan West Securities LLC et al.*
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH SUBPOENA *DUCES TECUM*
Case No. 2:10-CV-00291-MCE-GGH

Between January and March of 2008, PwC investigators visited the CEA's offices and, together with Mr. Marshall, interviewed certain individuals in the Authority's Finance Department. (Marshall Decl. at ¶ 16.) The investigators also requested and received copies of certain relevant internal CEA documents and correspondence to review as part of their analysis. (*Id.*) PwC, with the CEA's assistance, then contacted Wachovia to request its cooperation with the investigation. (*Id.* at ¶ 18.) Wachovia agreed, indicating that it was willing to make certain information available to PwC's investigators. (*Id.*) PwC subsequently proceeded to conduct another series of interviews with Wachovia employees and officers involved in the management of the CEA's account, which Wachovia's Assistant General Counsel Pamela Pearson attended. (*Id.* at ¶ 19.) In addition, Ms. Pearson coordinated the provision of certain requested documents by Wachovia to PwC. (*Id.* at ¶ 20.) During this time, Mr. Marshall also continued to send periodic confidential reports to the CEA Governing Board, updating Board members on PwC's progress as well as concurrent developments in the CEA's potential litigation strategy. (*Id.* at ¶ 21.)

On or around June 5, 2008, the CEA sent a formal request for mediation to Wachovia's counsel, pursuant to the dispute resolution provision of the contract between the parties. (*Id.* at ¶ 23.) In the meantime, on or around June 13, 2008, PwC e-mailed a draft version of its written report (the "PwC Draft Report") to Mr. Marshall. (*Id.* at ¶ 22.) The draft was forwarded confidentially to the members of the CEA Governing Board for their review, but was never finalized. (*Id.*) The draft was also forwarded to the CEA's outside counsel for use in drafting a complaint against Wachovia, to be filed if and when the Authority found it necessary to resort to litigation. (*Id.*)

The parties were ultimately unable to resolve the matter at mediation, and the CEA filed the underlying suit in California Superior Court on December 31, 2009. Wachovia subsequently removed the action to this Court on February 4, 2010. (Dkt. No. 1.) On or around June 6, 2012, Wachovia served the subpoena *duces tecum* on PwC that is the subject of the

*California Earthquake Authority v. Metropolitan West Securities LLC et al.*
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH SUBPOENA *DUCES TECUM*
Case No. 2:10-CV-00291-MCE-GGH

1   instant motion, requesting all documents in PwC's possession relating to "the MAINSAIL
2   INVESTIGATION."[1] (Marshall Decl. at Exh. 2 ("Subpoena").) The CEA is informed and
3   believes that it is PwC's practice to maintain all documentation relevant to a single project or
4   undertaking in one central "engagement file." Therefore, for purposes of this motion, the
5   documents in dispute are those contained in PwC's Mainsail Engagement File. After obtaining
6   and reviewing a copy of those materials, the CEA has determined that the Mainsail
7   Engagement File comprises the following categories of documents:

8       (1) Background documents provided by the CEA to PwC as potentially relevant to its
9           investigation, including:

10          a)  Correspondence:

11              i.   Internally between CEA staff;

12              ii.  Between the CEA and Wachovia; and

13              iii. Between CEA staff and the CEA's General Counsel or outside
14                   counsel;

15          b)  CEA account statements; and

16          c)  Other miscellaneous background documents;

17      (2) Background documents provided by Wachovia to PwC as potentially relevant to its
18          investigation, including:

19

20

21      [1] In addition to the Mainsail investigation documents, the subpoena broadly requests all
     documents related to "any and all investigations and/or audits [PwC] conducted that RELATE
22   TO. the CEA's investments, investment practices, investment policies, and/or investment
     procedures, and/or METWEST's performance as investment advisor to the CEA, other than
23   the MAINSAIL INVESTIGATION." (Subpoena at p.2.) However, because the CEA
     understands the Mainsail investigation to be the primary focus of the subpoena, and because
24   the parties are currently conferring to determine what other materials, if any, the catchall
     provision above encompasses, the instant motion is directed only towards the request for
25   documents held by PwC within the Mainsail investigation file, and the CEA reserves the right
26   to file additional motions to quash if it becomes apparent that other protectable interests
     outside of the Mainsail investigation file are implicated.
27

28

*California Earthquake Authority v. Metropolitan West Securities LLC et al.*
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH SUBPOENA *DUCES TECUM*
Case No. 2:10-CV-00291-MCE-GGH

a) Correspondence;

b) CEA account statements; and

c) Other miscellaneous background documents;

(3) PwC correspondence, including correspondence:

a) Between PwC and the CEA's General Counsel; and

b) Internally between PwC staff; and

(4) Work papers generated by PwC in the course of its investigation, including:

a) Notes from interviews with select CEA officers and employees;

b) Notes from interviews with select Wachovia officers and employees;

c) Graphs, charts, and memos reflecting PwC's own research into the facts underlying the Mainsail transaction; and

d) Report drafts.

The CEA now brings the instant motion to quash the subpoena directed to PwC, on the grounds that it requires production of attorney-client privileged communications and confidential attorney work product.

## III.   ARGUMENT

In the wake of the failure of the Mainsail investment, the CEA acted as anyone suddenly facing the potential loss of $62.25 million would: It immediately took steps to investigate the causes of that loss and to determine what its rights to recovery might be. The possibility of seeking relief through litigation was an early consideration, though by no means the only approach contemplated. Nevertheless, the CEA's conduct in the months following Mainsail's collapse was unquestionably influenced and guided in large part by the belief that the Authority might well be forced to resort to the very type of action that has now brought the parties before this Court.

Particularly when viewed in light of the CEA's perception of events during this period, there can be no doubt that the PwC investigation commissioned by the CEA, and all documents and communications that flowed from it, are protected from disclosure. The research, notes, communications, and other work papers that PwC created in conjunction with

its investigation, along with the draft report produced in June of 2008, constitute prototypical attorney work product under federal law. Furthermore, any correspondence between PwC and the CEA's General Counsel about the progress and particulars of the investigation are privileged attorney-client communications under California law, as are any communications made by CEA officers and employees to PwC investigators in the course of their inquiry. Therefore, the CEA now seeks to assert both of these forms of protection in order to prevent the disclosure of those materials that Wachovia seeks to recover from PwC's files.

### A.   WORK PRODUCT IMMUNITY

PwC's June 13, 2008 draft report—and any work papers, notes, memoranda, or communications generated in conjunction with the researching and writing of that report—falls squarely within the definition of work product safeguarded from discovery under federal law. Under FED. R. CIV. P. 26(b)(3), work product protection applies to any "documents or tangible things that are prepared in anticipation of litigation . . . by or for another party or its representative." Certainly, the materials at issue here qualify as "documents or tangible things," and they were indisputably created by PwC in its capacity as a representative or agent of the CEA. Therefore, the only question is whether the Mainsail investigation was conducted "in anticipation of litigation" within the meaning of Rule 26.

"[A] document [is] deemed prepared 'in anticipation of litigation' and thus eligible for work product protection under Rule 26(b)(3) if 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (quoting CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, 8 FEDERAL PRACTICE & PROCEDURE § 2024 (2d ed. 1994)). This standard "does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection where it can fairly be said that the 'document . . . would not have been created in substantially similar form but for the prospect of that litigation.'" *Id.* at 908 (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)).

6

Where the documents in question are materials created on a party's behalf by an outside agent, courts consider several factors in determining whether they were prepared "in anticipation of litigation," including "the timing of retention of the [agent] in relation to the litigation at issue and the existence of evidence including supporting affidavits and engagement letters." *U.S. Inspection Svcs., Inc. v. NL Engineered Solutions, LLC*, 268 F.R.D. 614, 619 (N.D. Cal. 2010); *see also Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist. (Fru-Con II)*, No. S-05-0583 LKK GGH, 2006 WL 2255538 at *3 n.3 (E.D. Cal. Aug. 7, 2006) (noting that work product created by non-testifying consultants would be immune from production provided that there is "some objective manifestation of retention of these experts for this [litigation] purpose"). Here, the evidence shows that the CEA initiated negotiations with PwC as soon as it began contemplating a potential lawsuit to recover its losses on the Mainsail investment. On the morning of December 13, 2007, the CEA's General Counsel, Mr. Marshall, instituted a litigation hold to ensure the preservation of all potentially relevant documents and records relating to the CEA's investment policies and investment management. (Marshall Decl. at Exh. 3.) Later that same day, Mr. Marshall contacted Lee Overstreet from PwC to discuss engaging his services to conduct the Mainsail investigation. (*Id.* at Exh. 4.) In addition, the CEA made it clear from the outset that the PwC investigation was to be overseen and managed directly by its General Counsel. *See Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist. (Fru-Con I)*, No. S-05-0583 LKK GGH, 2006 WL 2050999 at *5 (E.D. Cal. July 20, 2006) (highlighting the fact that all of the outside consultant's work was "performed at the direction of counsel" as weighing in favor of granting work product protection). In his December 13th e-mail to Mr. Overstreet, Mr. Marshall emphasized that he would be heading up the project, and that any future communications between the CEA and PwC on the matter were to be made solely through him. (Marshall Decl. at Exh. 4.) The final Engagement Letter between the parties reiterated that "[the] CEA has designated its General Counsel and Assistant General Counsel to oversee the Services." (Engagement Letter at p.3.)

There is also ample evidence to demonstrate that the CEA fully intended for PwC's findings to inform its litigation strategy in any potential lawsuit against Wachovia. The parties'

7

final agreement explicitly acknowledged that PwC's investigative services were being sought "in connection with [Mr. Marshall] giving legal advice to CEA." (Engagement Letter at p.1.) More importantly, while the investigation was ongoing, the CEA consistently treated all information arising from PwC's inquiry as strictly confidential because of its connection to a potential lawsuit. Nowhere is this more apparent than in the Governing Board meetings that took place during this period. By way of background, the CEA, as an instrumentality of the State of California, is subject to certain laws mandating transparency in most aspects of its operations. This includes a requirement that the CEA's Governing Board meetings be open to the public. CAL. INS. CODE § 10089.7(*l*) (making the Bagley-Keene Open Meeting Act applicable to meetings of the CEA Board). However, the applicable statute also provides an exception under which the Board may meet in closed session to discuss a limited number of confidential matters, including the provision of legal advice "regarding pending litigation." CAL. GOV. CODE § 11126(e)(1). Following the CEA's initial announcement at its December 13, 2007 Governing Board meeting that it would be engaging an outside auditor to investigate the Mainsail incident, all subsequent updates from General Counsel on the progress of that investigation were made in closed session, including at meetings held on January 16, 2008 and March 12, 2008. (Marshall Decl. at Exhs. 7 & 9.) In addition, Mr. Marshall provided a number of confidential updates to the Board members between meetings, in which he made explicit reference to the direct relationship between the results of PwC's investigation and the CEA's litigation strategy. (*Id.* at Exhs. 7, 8 & 9.) The PwC Draft Report was also provided to outside counsel for use in preparing the complaint that was ultimately filed in this case. (*Id.* ¶ 22.)

That the PwC report may *also* have been useful to the CEA for purposes other than preparation for litigation does not affect the outcome of the analysis here. Under federal work product law, the central distinction is between documents that are prepared due to anticipated litigation, and "documents generated in the ordinary course of business or as a result of an independent duty." *Fru-Con I, supra,* 2006 WL 2050999 at *4 n.3. No statute, regulation, or policy compelled the CEA to undertake an in-depth examination of its investment losses. *Cf.*

8

1   *People ex rel. Wheeler v. S. Pac. Transp. Co.*, No. Civ. S-92-1117 LKK GGH, 1993 WL

2   816066, *5 (E.D. Cal. Sept. 2, 1993) (finding that state had a mandatory duty to conduct an

3   environmental damage assessment under federal statute, such that the results of that

4   assessment could not be granted work product protection). And given the unique set of

5   circumstances surrounding the Mainsail incident, the decision to commission the PwC

6   investigation could not be further from the "ordinary course of business."

7   Moreover, when a document's non-litigation purpose is "grounded in the same set of

8   facts that created the anticipation of litigation," that document retains its work product

9   protection. *In re Grand Jury Subpoena (Torf)*, *supra*, 357 F.3d at 909. Whatever business

10   reasons the CEA might have had for conducting an investigation into its own investment

11   practices, all of those reasons arose from the same incident—a single, bad investment, that

12   resulted in an extraordinary, one-time loss. It was this same incident that also simultaneously

13   created a very real prospect of litigation for the CEA, the anticipation of which necessarily

14   pervaded the decision by its General Counsel to engage PwC's services. *Cf. Visa U.S.A. v.*

15   *First Data Corp.*, No. C-02-1786JSW(EMC), 2004 WL 1878209 at *7 (N.D. Cal. Aug. 23,

16   2004) (concluding that outside consultants' analysis would have been undertaken regardless of

17   prospect of litigation, in part because consultants were retained by the plaintiff's Executive

18   Vice President of Operations and Risk Management, and not by counsel). Thus, work product

19   protection still attaches to PwC's report drafts and other documents, because "their litigation

20   purpose so permeate[d] any non-litigation purpose that the two purposes cannot be discretely

21   separated from the factual nexus as a whole." *In re Grand Jury Subpoena (Torf)*, *supra*, 357

22   F.3d at 910.

23   Nor can Wachovia make any showing sufficient to overcome the work product

24   protection afforded these documents. All of the non-privileged information on which PwC

25   based its report either is already in Wachovia's possession—as in the case of relevant

26   documents provided by the CEA to PwC, which have already been produced to Wachovia in

27

28

9

the course of discovery in this case (i.e., documents within Category (1) *supra*, with the exception of Subcategory (1)(a)(iii))[2]—or is readily obtainable by Wachovia, for example, by deposing the individuals interviewed by PwC's investigators. *See Pittman v. County of San Diego*, No. 09-CV-1952-WQH (WVG), 2010 WL 4570252, at *5 (S.D. Cal. Nov. 3, 2010) (finding work product protection not overcome where the reports sought "contain no facts that are unique to them and which cannot be obtained during the ordinary course of litigation and discovery"); *Carrasco v. Campagna*, No. C-03-4727 SBA (EMC), 2007 WL 81909, at *3 (N.D. Cal. Jan. 9. 2007) (no undue hardship justifying production of witness interview notes where requesting party "either deposed or had the opportunity to depose the witnesses at issue").[3] Indeed, that Wachovia's own counsel was present at the interviews of its officers and employees not only confirms that both parties were well aware of the impact of PwC's investigation on the potential for litigation, but suggests that Wachovia is likely already in possession of any information relating to those interviews, as well.

In sum, because PwC's Mainsail investigation was conducted by and through the CEA's counsel and in direct anticipation of litigation, the CEA requests that all report drafts,

---

[2] This is true, of course, only with regard to documents that are *relevant* to this case. The Mainsail Engagement File does include some documents provided by the CEA to PwC, possibly in error, for which there is no ascertainable relevance to the investigation or the instant case. (*See, e.g.*, Marshall Decl. at Exh. 6.) These documents have not been produced to Wachovia from the CEA's own files, but the CEA does not oppose their production here from the Mainsail Engagement File if Wachovia so wishes.

[3] The CEA notes that, to the extent that some of the work papers in question also reflect the "mental impressions, conclusions, opinions, or legal theories" of PwC or the CEA's counsel, they are entitled to even stricter protection as opinion work product, such that they are only discoverable if "mental impressions are *at issue* in a case and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). However, even under the less strict standard for overcoming factual work product protection, Wachovia is unable to make the necessary showing of substantial need and undue hardship, as described above.

*California Earthquake Authority v. Metropolitan West Securities LLC et al.*
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH SUBPOENA *DUCES TECUM*
Case No. 2:10-CV-00291-MCE-GGH

1   communications, notes, memoranda, other work papers related to the investigation be shielded

2   from disclosure in response to Wachovia's subpoena. However, because the CEA believes that

3   Wachovia is or should already be in possession of the documents in Category (1) (with the

4   exception of Subcategory (1)(a)(iii)), Category (2), and Category (4)(b) as outlined *supra*, the

5   CEA excepts these documents from its request and makes no objection to their production by

6   PwC.

7   **B.    ATTORNEY-CLIENT PRIVILEGE**

8   Many of the categories of documents demanded by Wachovia are also subject to

9   protection under the attorney-client privilege. First and foremost, any copies of privileged

10   communications that were provided to PwC by the CEA's General Counsel as part of the

11   CEA's document production to PwC—i.e., documents in Category (1)(a)(iii) *supra*—have

12   retained their protected status and may not now be produced to Wachovia by PwC. These

13   privileged documents were transmitted in confidence to a third party, PwC, to whom

14   disclosure was "reasonably necessary" in order for the CEA's General Counsel to properly

15   provide the legal advice for which he was consulted. *Zurich Am. Ins. Co. v. Superior Court*,

16   155 Cal. App. 4th 1485, 1503 (2007) (quoting CAL. EVID. CODE § 952).

17   In addition, any and all communications between PwC and the CEA that relate to the

18   Mainsail investigation must also be considered confidential attorney-client communications.

19   This conclusion is most apparent in the case of communications directly between PwC and the

20   CEA's General Counsel, Mr. Marshall: Because PwC was retained by the CEA to perform

21   certain services, it was at all times acting as the CEA's agent, such that its communications

22   with the CEA's General Counsel are entitled to the same privilege that the CEA's own

23   communications with its General Counsel would be. *City & County of S.F. v. Superior Court*,

24   37 Cal. 2d 227, 236-37 (1951); *Rodriguez v. Superior Court*, 14 Cal. App. 4th 1260, 1266

25   (1993).

26   However, the privilege also applies to communications between individual CEA

27   officers and employees and PwC, to the extent those communications conveyed information

28   intended to assist in PwC's investigation. This is so because CEA staff understood that PwC

*California Earthquake Authority v. Metropolitan West Securities LLC et al.*
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH SUBPOENA *DUCES TECUM*
Case No. 2:10-CV-00291-MCE-GGH

was at this time acting as a representative of the CEA's General Counsel. CAL. EVID. CODE § 952, Comment to 1965 Amendment ("A lawyer at times may desire to have a client reveal information to an expert consultant in order that the lawyer may adequately advise his client. The inclusion of the words 'or the accomplishment of the purpose for which the lawyer is consulted' assures that these communications, too, are within the scope of the privilege."); *see also City & County of S.F.*, *supra*, 37 Cal. 2d at 236; *People v. Meredith*, 29 Cal. 3d 682, 690 n.3 (1980) ("Because the investigator, then, is a person encompassed by the privilege, he stands in the same position as the attorney for purposes of the analysis and operation of the privilege; the investigator cannot then disclose that which the attorney could not have disclosed."). If, for example, a CEA employee e-mailed PwC a document that she deemed relevant to the Mainsail transaction, the employee did so with the knowledge that she was providing the document in order to assist in the preparation of a report being written under the General Counsel's direction. *See Suezaki v. Superior Court*, 58 Cal. 2d 166, 177 (1962) (holding that where "facts or impressions emanating from the client [are communicated] to the agent and by him transmitted to the attorney," "it is as if the client himself transmitted the material to his attorney").

The privilege further applies to protect any documents in PwC's possession containing notes or information from its investigators' interviews of CEA staff. Not only were these interviews simply face-to-face communications between the CEA and PwC—which, as explained above, are already entitled to be treated as privileged—but, because Mr. Marshall was present at and participated in each of these interviews, each conversation also constituted a direct attorney-client communication. *Fru-Con I*, *supra*, 2006 WL 2050999 at *6 ("An employee's conversations with corporate counsel will be protected when the employee understands that he is being interrogated by corporate counsel *on matters within the scope of the employee's duties* for the purpose of the attorney giving advice to the corporation.").

Thus, in addition to the work product immunity described above, any already privileged communications forwarded by the CEA to PwC (Category (1)(a)(iii)), any communications between the CEA and PwC relating to the Mainsail investigation (Category (3)(a)), and any

*California Earthquake Authority v. Metropolitan West Securities LLC et al.*
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH SUBPOENA *DUCES TECUM*
Case No. 2:10-CV-00291-MCE-GGH

1  notes or other documentation of PwC's interviews of CEA staff (Category (4)(a)), are entitled
2  to further protection under the attorney-client privilege.

3  **IV.    CONCLUSION**

4  The moment it became clear to the CEA's General Counsel in late 2007 that the
5  Authority was potentially facing an extraordinary, one-time $62.25 million investment loss, he
6  set in motion the events that created the set of documents now sought to be discovered by
7  Wachovia. Anticipating that litigation was likely to ensue, the CEA's General Counsel
8  immediately sought the advice of outside counsel, and he simultaneously took the step of
9  hiring an independent expert, PwC, to help the Authority assess the facts underlying its
10 potential lawsuit.  The work performed by PwC was not conducted in the ordinary course of
11 the CEA's business but was designed to help the Authority prepare its eventual case against
12 Wachovia, and in its role as an agent of the CEA under the direct supervision of the CEA's
13 General Counsel, PwC became privy to a significant amount of privileged information and
14 communications.  PwC's work papers and correspondence cannot be disclosed to the very
15 party against whom the CEA is now indeed embroiled in litigation, in the very case that the
16 CEA retained PwC to investigate and to help develop for the Authority. However, this is
17 precisely what the subpoena *duces tecum* issued by Wachovia demands from PwC.  Because
18 the above-identified categories of documents contained in Wachovia's Mainsail engagement
19 file are protected from discovery by both federal work product immunity and state attorney-
20 client privilege, the CEA respectfully requests that the Court grant its motion to quash the
21 subpoena.

22

23 //

24 //

25

26

27

28

13

Dated: June 21, 2012

STRUMWASSER & WOOCHER LLP
Michael J. Strumwasser
Fredric D. Woocher
Patricia T. Pei

By: _____ /s/ *Fredric Woocher* _____
Fredric D. Woocher

Attorneys for Plaintiff
*California Earthquake Authority*

14