IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA EARTHQUAKE
AUTHORITY,

       Plaintiff,                    No. 2:10-cv-0291 MCE GGH

    v.

METROPOLITAN WEST
SECURITIES, LLC et al.,

       Defendants.             MEMORANDUM
_____/

       Before the court on November 1, 2012 were three discovery motions: plaintiff California Earthquake Authority's ("CEA") motion to compel further deposition testimony of Terry Crow (dkt. 80), and defendants' Metropolitan West Securities, LLC ("MetWest") and Wells Fargo Bank, N.A. ("Wells") motions to compel the production of certain documents (dkts. 82, 79 respectively). The discovery cut-off is set for December 3, 2012. Dkt. 46 at 2. In accordance with Local Rule 251(c) the parties filed their joint statements on October, 25 2012, and the matter was heard before the undersigned on November 1, 2012. Dkts. 86, 93, 89.

       Appearing before the court were Christopher Foster and Jennifer Fearnow on behalf of defendants and Michael Strumwasser and Patricia Pei for plaintiffs. Upon hearing

1

argument and reviewing the briefs submitted, the undersigned issued orders from the bench; this memorandum summarizes the motions, facts and those orders.

BACKGROUND

CEA brings this action against MetWest and Wells Fargo (herein Met West or defendants), seeking recovery of the majority of MetWest's approximately $62 million investment of CEA funds into Mainsail, a structured investment vehicle holding residential mortgage-backed securities.[1]  Shortly after the August 2007 purchase of the Mainsail investment, the fund encountered severe liquidity issues which resulted in its assets being frozen. More than a year later, after Mainsail went into a receivership and underwent a restructuring process, CEA recovered some of its principle investment but ultimately lost over $47 million of its original purchase.

Subsequently, on December 31, 2009, CEA filed the instant action against defendants, alleging causes of action for breach of contract, breach of fiduciary duty, constructive fraud, and unfair business practices, and seeking to recover its loss on the Mainsail investment with interest as well as punitive damages and civil penalties. The action was removed to this court on February 4, 2010.  Dkt. 1.

CEA contends that defendants are liable on essentially two theories: (1) That the Mainsail investment was illegal, and; (2) that the Mainsail investment was imprudent in that MetWest knew or should have known that Mainsail was a highly risky and inappropriate investment for CEA.

Before the undersigned were three discovery disputes involving the production of documents (dkts. 86, 89) and extending the deposition of a party witness (dkt. 93).  Because each of the disputes arise from separate and distinct sets of facts the court will discuss them separately.
/////

---

[1] A more detailed statement of the facts giving rise to the litigation can be found in the court's order dated August 1, 2012.  Dkt. 75.

DISCUSSION

**MetWest's Motion to Compel Production of Documents**

Though styled as a motion to compel production of documents, Met West essentially asked the court to compel plaintiff to provide assurance that CEA's production is complete and compliant with Met West's First Request for Production of Documents ("RFPs"). Over the past two months, the parties have haggled over the adequacy of CEA's production of audits and audit-related documents. The relevant RFPs, propounded on February 25, 2011, seek the following:

> **Request No. 18:**
>
> ALL DOCUMENTS RELATING TO YOUR monitoring, analysis, surveillance, or tacking of YOUR investments.
>
> **Request No. 34**
>
> ALL DOCUMENTS RELATING TO any audit, review, or analysis of DEFENDANTS' operations, including, but not limited to, ANY audit conducted by YOU or PWC.

In response to these broad "all-documents" requests, the parties fashioned a procedure for producing responsive documents. Custodians of potentially relevant documents were identified, their documents were collected and then searched through using search terms and parameters agreed-upon by the parties. It was through this process that the relevant audits and related documents (requested above) were produced to MetWest and Wells Fargo. However, defendants wanted to know if, *in fact*, all audits or compliance reviews from 1998 through 2008 that were conducted by CEA of MetWest's investment activity have been produced. 11/1/2012 Hr'g.. Their suspicion that some audits have not been produced arises from reviewing four audits which appear to have been conducted on a periodic basis but which cannot be found for all

\\\\\
\\\\\
\\\\\

3

the time periods during which Met West served as plaintiff's investment adviser.[2]  These documents include the following:

- CEA's compliance reviews of MetWest
- CEA's formal reviews of CEA investments, such as quarterly reviews
- CEA's internal control audits
- CEA's financial audits

When MetWest raised this issue with CEA, plaintiff responded with a letter simply reiterating the steps it took to collect and search for documents.  Dkt. 87-15.  As discussed at hearing, to address defendants' concern, plaintiff will undertake a more searching investigation and determine whether any further such documents exist that have not already been produced.  Defendants were most concerned with those audits conducted during the tenure of Bill Liu's employment at MetWest as Mr. Liu's deposition is fast approaching.  11/1/2012 Hr'g. 10:00amPST.  Plaintiff will therefore provide to defendants any such audits it finds related to Mr. Liu at least 24 hours before his deposition.  All other audit documents plaintiff locates upon investigation will be produced to defendants within 14 days from the hearing date.

Defendants raised additional concerns over apparent gaps in CEA's production.  They cite the absence of certain emails and question CEA's litigation hold and document retention policy.  Dkt. 86.  Though the court does not generally require parties to give declarations as to the completeness and thoroughness of their productions, at hearing plaintiff certified to the court that it is still in the process of collecting and producing documents pursuant to the parties' recent agreement for additional custodians and search terms.  Once that production is complete, plaintiff shall certify that it has complied with all requests for production in accordance with the terms and processes previously agreed upon between the parties.

\\\\\

---

[2] Although the requests at issue encompass more than specific audits, it appeared from the joint statement and hearing arguments, that only the documents specifically identified in the joint statement were at issue.

**CEA's Motion to Compel Production of Documents**

By Request For Production ("RFP") served on or around August 21, 2012, CEA sought a series of documents dating from June 6, 2006 to June 5, 2008, between defendant MetWest and Evergreen Investments ("Evergreen"). Dkt. 90-1. Between September 19 and 24, 2012, the parties corresponded regarding Wells Fargo's anticipated objections to the RFP but were unable to reach agreement. The crux of the dispute centers on Evergreen's relationship to defendant Wells Fargo; specifically, whether Wells Fargo stands in a position of legal control over Evergreen sufficient to require Wells Fargo to produce documents of Evergreen's. The parties squabble over the extent to which Evergreen is, or ever has been, owned or controlled by the parties (or controlled by corporate parents of the present parties) to this action such that defendant has a duty to produce documents responsive to CEA's requests pursuant to Fed. R. Civ. Pro. 34 (a)(1)[3].

Despite this dispute, on October 18, 2012 counsel for Wells Fargo accepted service of a Rule 45 subpoena containing the same set of RFPs as those directed at Wells Fargo upon Evergreen. Dkt. 89 at 6; 90-5. For purposes of responding to this subpoena, counsel for defendants represents Wells Fargo Funds Management, LLC, the parent company of Evergreen. 11/1/2012 Hr'g. The subpoena requested the documents described therein be produced by October 31, 2012. Dkt. 90-5. At hearing, counsel represented that objections to the subpoena were placed in the mail via overnight delivery on October 31, 2012.

The extent to which related corporations are treated as if they were the party is a complex and fact intensive inquiry. In this case, plaintiff not only sought to treat Evergreen as a party, but it also subpoenaed Evergreen pursuant to Rule 45 as if it were a non-party. The court did not proceed to adjudicate the "party" dispute presented by this motion because the identical discovery is at issue in the Rule 45 context, a motion which was to be heard shortly after the

---

[3] Fed. R. Civ. Pro. 34(a)(1) requires a party to produce requested documents which are in its possession, custody or control.


present motion.

**CEA's Motion to Extend Deposition**

CEA deposed Terry Crow, former Chief Investment Officer of MetWest, for six hours on July 18, 2012. Dkt. 93 at 5-6. The deposition was cut short by one hour on account of CEA counsel's illness. Though Mr. Crow and his counsel agreed to an additional half-day of testimony, CEA seeks an additional, full day to depose the witness.

Mr. Crow served as defendant MetWest's Chief Investment Officer for nearly fifteen years, during the near entirety of the CEA's relationship with defendant. Dkt. 93 at 10. He was the single individual to whom all Met West investment personnel reported, had regular if not sole contact with the CEA during the course of their relationship and the wrote the Investment Guidelines which are at the heart of this litigation. Id. Mr. Crow supervised the trading floor when the Mainsail investment was made and was heavily involved in its workout. Id at 16. Plaintiff contends that Mr. Crow is their "single most important witness" and one of only two for whom they seek more than one day's worth of deposition. Id. Though the first six hours of his deposition covered topics including Mr. Crow's understanding of fiduciary duty, the functioning of the Investment Committee (of which he was a part), the nature of his relationship with CEA, his knowledge of the Mainsail instrument, and defendant MetWest's oversight of other investment officers in the corporation, plaintiff claims there is much ground yet to cover with this crucial witness. Id at 18-20. Specifically, CEA needs an additional day of testimony to examine Mr. Crow on the events of the 1990s when MetWest was retained as CEA's investment advisor and when Mr. Crow wrote the Investment Guidelines. Id at 20. Additionally, plaintiff seeks time to question Mr. Crow on the market conditions preceding the Mainsail investment, and on the 116,000 documents produced by defendants since his deposition — some 30,000 of which came from the custodial files of Mr. Crow.

Fed. R. Civ. Pro. 30(d)(1) requires a court to allow additional deposition time beyond the presumptive seven-hour limit if needed to fairly examine the deponent or if the

deponent or other circumstances impedes or delays the examination.  The party seeking to extend the deposition is expected to show good cause to justify such an order.  Fed. R. Civ. Pro. 30(d)(1) Notes of the Advisory Committee on the 2000 Amendment.  Defendants contend that plaintiff has failed to provide such a justification, pointing out that Mr. Crow was nothing but cooperative during his deposition and in no way impeded plaintiff counsel's examination.  The court does not disagree with counsel's characterization but considers additional factors which, on balance, weigh in favor of allowing an additional, full day of deposition testimony from Mr. Crow.  See Fed. R. Civ. Pro. 30(d)(1) (court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent).

Pertinent to this case and to this deponent is the magnitude of the factual issues presented and Mr. Crow's role in the facts which give rise to them.  See  Fed. R. Civ. Pro. 30(d)(1) Notes of the Advisory Committee on the 2000 Amendment (courts issuing an order to extend an deposition might consider a variety of factors), Fleming v. Coverstone, 2009 WL 4040066, at *1 (S.D. Cal. 2009) (good cause to extend deposition where witness was needed to provide testimony on five important issues).  As Chief Investment Officer of defendant MetWest during the relevant time period, the significance of Mr. Crow's testimony on his interactions with CEA, his involvement with the investment at issue, the investment guidelines he wrote governing the purchase of the Mainsail instrument, and the market conditions at the time of that purchase, can hardly be overstated.  The court also considers the voluminous and ongoing production of documents that have been made in this case — 116,000 documents produced since Mr. Crow's deposition alone.  See In re Republic of Ecuador, 2012 WL 487158, at *3 (E.D. Cal. February 2012) (considering, in part, the 55,000 documents produced in granting extension to deposition).  Given that defendants do not cite any particular burden on Mr. Crow or extreme circumstances imposed by an additional day of deposition and that he has voluntarily agreed to sit for an additional few hours of testimony anyway, the undersigned will allow an extension of Mr. Crow's deposition to include a full seven hours of examination.

CONCLUSION

In accordance with the above and as discussed herein, it was ordered at hearing:

1. By November 8, 2012, plaintiff shall have investigated its production of audits and related documents and report its findings to defendants;

2. By November 15, 2012, plaintiff shall produce to defendants any such documents not previously produced;

3. No later than 24 hours before the deposition of Bill Liu, plaintiff shall produce to defendants any audits or related documents created during the time of Mr. Liu's employment at MetWest that have not been previously produced;

4. On November 14, 2012 at 10:30am, the undersigned will hear argument on the motion to compel in connection with the Rule 45 subpoena on Evergreen Investments on October 18, 2012,

5. Prior to the November 14, 2012 hearing, the parties shall submit a joint statement for the undersigned to review by November 12, 2012; and

6. Plaintiff's are allowed an additional seven (7) hours to depose Terry Crow at a time and place of the parties' choosing.

IT IS SO ORDERED.

DATED: November 20, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH9