IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA EARTHQUAKE AUTHORITY,

Plaintiff, No. 2:10-cv-0291 MCE GGH

v.

METROPOLITAN WEST SECURITIES, LLC et al.,

Defendants. ORDER

_________________________________/

Presently before the court is plaintiff California Earthquake Authority's ("CEA") motion to compel the production of documents from non-party witnesses Wells Capitol Management, Inc. and Wells Fargo Funds Management, LLC (successor by merger to Evergreen Investment Management Company, LLC)("Evergreen"). Dkt. 104. The discovery cut-off is set for December 3, 2012. Dkt. 46 at 2. The parties filed a joint statement of their dispute. Id. This matter was heard before the undersigned on November 14, 2012.

Appearing for plaintiff was Patricia Pei and Fredric Woocher. Appearing on behalf of non-party witness Evergreen was David Reidy. Upon consideration of the briefs submitted and oral argument, the court issues the following order.

BACKGROUND

This discovery dispute arises from litigation between CEA and defendants Metropolitan West Securities, LLC ("MetWest") and Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, N.A. ("Wachovia") (collectively, "defendants"), seeking recovery of the majority of MetWest's approximately $62 million investment of CEA funds into Mainsail, a structured investment vehicle holding residential mortgage-backed securities.[1] Shortly after the August 2007 purchase of the Mainsail investment, the fund encountered severe liquidity issues which resulted in its assets being frozen. More than a year later, after Mainsail went into a receivership and underwent a restructuring process, CEA recovered some of its principle investment but ultimately lost over $47 million of its original purchase.

The precise nature of the relationship between MetWest and Evergreen is disputed, but the court discerns the following from the arguments of the parties to this dispute. At the time of the Mainsail purchase, both Evergreen and MetWest were wholly-owned subsidiaries of Wachovia Bank, N.A.[2] Though separate legal entities, CEA contends that the two shared information — including credit research and analysis — and MetWest may have ignored information from Evergreen that indicated Mainsail was not a safe investment months before MetWest made that purchase. Evergreen maintains that the two entities kept separate credit research departments and credit committees. It further posits that internal risk assessments were not shared with MetWest and there is no evidence showing that this information could have been accessed by MetWest. At hearing, MetWest represented that no official arrangement existed between the two entities prior to the Mainsail transaction, though CEA points to various documents indicating that the parties may have shared or had access to each other's investment

---

[1] A more detailed statement of the facts giving rise to the litigation can be found in the court's order dated August 1, 2012. Dkt. 75.

[2] Facts of the relationship between Evergreen and the parties are taken from the joint statement and from the hearing. Dkt. 104, 11/14/2012 Hr'g.

information beyond the direct communications between the parties which have already been produced. See infra pp5-6.

A third-party subpoena was served on Evergreen by CEA on October 18, 2012. Dkt. 105-1 at 4-8. The subpoena contained four requests for production — the same four that were also previously served on MetWest[3] — and the three at issue are as follows:

> (11) All documents dated or created between June 6, 2006 and June 5, 2008, that were in the possession, custody, or control of Evergreen during the same period, and that contain one or more of the following keywords:
>
> 1. Mainsail
> 2. Solent
> 3. CEA
> 4. Earthquake Authority
> 5. *@calquake.com
> 6. Richison
> 7. METSWeb *or* METS Web
>
> (13) All correspondence between Evergreeen and Richard Chen dated between June 6, 2006 and June 5, 2008.
>
> (14) All correspondence between Evergreen and Terry Crow dating between June 6, 2006 and June 5, 2008.

Evergreen's primary contention with all of these requests is that they seek information not relevant to the instant litigation.

DISCUSSION

Fed. R. Civ. Pro. 26(b) allows the court to order discovery of any matter relevant to a claim or defense involved in the action. Evidence is relevant if it has *any* tendency to make a

---

[3] The court deferred the dispute on the CEA requests for production served on Met West (Wells Fargo) in a previous order due to the identical dispute raised by the subpoena on Evergreen.

fact of consequence more or less probable than it would be without the evidence. Fed. R. Evi. 401(emphasis added). For purposes of discovery, relevancy is defined very broadly and may include information reasonably calculated to lead to the discovery of admissible evidence. See Survivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir. 2005), Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998); and see Fed. R. Civ. Pro. 26(b)(1) (Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence).

Though not expressly stated, Rule 45 incorporates the same relevancy requirements imposed by Rule 26. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005) (courts incorporate relevance as a factor when determining motions to quash a subpoena), Karol v. Med-Trans, 2012 WL 2339333, at *2 (E.D. Cal. June 19, 2012) (all discovery mechanisms, including Rule 45 subpoenas, are subject to the relevancy requirements under Rule 26), EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc., 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012) (Rule 45 subpoena is subject to the relevance requirements set forth in Rule 26(b)) citing Compaq Computer Corp. v. Packark Bell Elecs., 163 F.R.D. 329, 335-36 (N.D. Cal. 1995). Acting as a backstop to the broad scope of discovery is Fed. R. Civ. Pro. 26(b)(2)(C). This rule requires the court to limit the extent of discovery if the burden or expense of production outweighs its potential benefits.

DOCUMENTS RELEVANT TO THE CLAIMS

Evergreen maintains the position that the only documents in its possession which are relevant to this litigation and which it is required to produce, are documents it affirmatively communicated to MetWest about Mainsail. Dkt. 104 at 9. Plaintiff maintains that the scope of relevancy is broader than this and draws the court's attention to the various legal theories to which the Evergreen documents are directed. The operative complaint alleges a breach of fiduciary duty against defendant MetWest. Dkt. 1-2 at 16. Specifically, CEA pleads that defendant agreed to provide financial and investment services with "due care, skill, prudence,

and diligence" and that it breached this duty by purchasing the Mainsail investment instrument. Id. Thus, this case involves elements of what was known about propriety of the Mainsail investment, and what should or could have been known.

What MetWest Knew

CEA alleges that MetWest was, in fact, aware of information showing that Mainsail was a risky, imprudent investment but chose to ignore this information. Dkt. 104 at 19. Documents directly communicated between Evergreen and MetWest prior to the purchase and discussing the investment itself are clearly relevant to the issue of what MetWest knew of Mainsail. But this is not the only evidence that could be used to show knowledge. Access to shared databases, email servers or document repositories containing significant documents can also reveal the extent of MetWest's knowledge. Informal communications between the parties which were never memorialized in writing but may have been captured by meeting invitations, email exchanges among third parties and the like, also point to knowledge.

Evergreen represents that no such sharing of information occurred prior to the failure of the Mainsail investment (11/19/2012 Hr'g.), but CEA points to evidence suggesting otherwise. A document from January 2007 detailed MetWest's business plan which included "leverag[ing] Evergreen/Wachovia resources" and "utiliz[ing] Evergreen approved issuers list." Dkt. 105-10 at 25. A March 20, 2007 email from the Chief Operating Officer of Wachovia Global Securities Lending forwarded an email regarding an upcoming Evergreen Risk Management Committee meeting to Richard Chen, the MetWest credit analyst responsible for purchasing Mainsail. Dkt. 105-6 at 2. There was also a November 2006 business proposal referencing a "current initiative to share technology and credit resources with [its] parent's investment arm, Evergreen Investments." Dkt 105-9 at 5. Additionally, at hearing Evergreen conceded that it held a risk committee meeting in the summer of 2007 that was attended by MetWest credit analysts, though no topics relevant to the Mainsail investment were supposedly

\\\\\

discussed.[4] 11/14/2012 Hr'g. Finally, the parties do not dispute that they were, during the relevant time period, wholly-owned subsidiaries of the same parent corporation — Wachovia Bank, N.A. Dkt. 104 at 5, 9.

Though the court makes no finding that this relationship renders Evergreen and MetWest related in a legally binding way, the evidence presented does show that the parties are more than strangers, unknown to each other except through this litigation. That the relationship between Evergreen and MetWest is so sharply disputed supports the need for more, not less, discovery from Evergreen to uncover what information was shared between or made available to the parties. The nature of this relationship is, at bottom, a factual dispute that should not be resolved by the undersigned, or at this stage of litigation. But there is enough evidence to say that these parties are not strangers engaging in wholly independent business ventures. Further discovery is warranted to flesh out the details of that relationship particularly in light of the claims alleged here.

What MetWest Should Have Known

Even if MetWest did not posses actual knowledge that Mainsail was a poor investment, CEA might pursue the theory that MetWest's credit analyst *should have known* that Mainsail was a risky investment and failed to conduct a sufficiently diligent inquiry prior to making the purchase. Dkt. 104 at 23. Evergreen counters that there is no basis for claiming that MetWest *should have* looked at Evergreen's analysis of Mainsail prior to making that purchase. Counsel points to the deposition of Richard Chen, the MetWest credit analyst responsible for the Mainsail transaction. Mr. Chen deposed that he, and he alone, was responsible for conducting

---

[4] Evergreen represents that no information relevant to Mainsail was discussed at this meeting. 11/14/2012 Hr'g. Neither CEA nor the court need rely on counsel's representation, but the fact that the two parties both attended a risk committee meeting is most important here. As another piece of evidence suggesting that a relationship existed between the parties, the fact of MetWest's attendance is more important than the substance of what was discussed. Furthermore, Evergreen has not stated that this was the only meeting of Evergreen's risk committee which was also attended by MetWest credit analysts. Only further discovery will reveal the extent of the interrelationship.

the inquiry surrounding the Mainsail purchase, the buck stopped with him and any mishaps were on him. 11/14/2012 Hr'g. Moreover, Mr. Chen resigned shortly after Mainsail failed and wrote a resignation email expressing his regret in purchasing that investment. But this evidence is insufficient to deny discovery. CEA is entitled to argue, and to put forth evidence, that MetWest failed to diligently investigate the soundness of the Mainsail investment. Such an argument bears directly on the fiduciary duty owed to CEA by way of its investment-advisor relationship with MetWest.[5] See Dkt. 1-2 ( . . . .[defendant] agreed to provide financial and investment services [] with due care, skill, prudence, and diligence. The CEA placed its trust and confidence in [defendant's] integrity and fidelity.) In other words, it is not what Mr. Chen did that is most crucial to this allegation; rather, it is what he *failed* to do. If he had access to Evergreen's knowledge, and failed to afford himself of this opportunity to assess the propriety of the Mainsail investment with this knowledge, this failure might well be determined to be inexcusable by the trier of fact. The alleged failure of that duty is not a matter for the undersigned to decide during the discovery stage. But it is a matter which CEA is entitled to discover.

As discussed above, the evidence presented thus far indicates a relationship between the parties raising a reasonable theory that the two shared information of their investments. If such a relationship existed, and such information was available to MetWest, the extent to which MetWest utilized that information is relevant to the scope of its duty to exercise due care, prudence and diligence. See Id. CEA is entitled to discovery that explores the bounds of that relationship and provides an evidentiary basis for its claim.

\\\\\

[5] Evergreen's reference to Magistrate Judge Laporte's ruling in State Compensation Insurance Fund v. Metropolitan West Securities, LLC., et al., does not lead the undersigned to another conclusion. 09-CV-02959 (N.D. Cal. December 13, 2011). The hearing transcript and summary order do not provide explanation for the basis upon which the internal documents were not discoverable. The hearing transcript includes two sentences stating only that the theory of a duty to inquire was not "super" persuasive and that it mixes up the "timetable." Dkt. 106-4 at 4-5. The accompanying order does not include any discussion supporting the ruling. Dkt. 106-5 at 3-4.

Foreseeability of Mainsail's Failure

MetWest acknowledges that it intends to put forth the defense that no reasonable investment manager could have foreseen the demise of Mainsail. Dkt. 104. In rebuttal to this defense, CEA is entitled to put on evidence that the demise of Mainsail was foreseeable and one such piece of evidence is that Evergreen — an investment entity not unrelated to MetWest — dropped its own investment in Mainsail several months prior to MetWest's purchase of the same. At hearing, Evergreen urged that the fact that another credit analyst reaching a different conclusion with respect to the same investment is entirely irrelevant. 11/19/2012 Hr'g at 10:30am PST.

First, as discussed as above, Evergreen is not merely another credit analyst in the marketplace who reached a different conclusion to that reached by MetWest on the same investment. CEA might well not be entitled to obtain discovery from any and all other unrelated investors in the marketplace who reached the same conclusion as Evergreen did with respect to the Mainsail investment. However, it is the potential relationship between Evergreen and Met West which gives rise to the allegation that MetWest should have looked at what Evergreen thought of the Mainsail investment (if such a look was possible) before it transacted.

Additionally, it is not the *conclusion* that Evergreen reached with respect to Mainsail that is relevant here; it is the reasons underlying Evergreen's decision to drop Mainsail that are relevant to the issue of whether or not Mainsail's demise was foreseeable. If MetWest maintains the position that no reasonable investment manager could have predicted the failure of Mainsail, CEA should be able to counter that by pointing to Evergreen's assessment of Mainsail in the months leading up to the transaction to show that there was information in the marketplace, available to analysts, upon which a more sound investment decision could have been reached. Without discovery of Evergreen's internal analyses of Mainsail, CEA cannot show what MetWest *should have* seen.

\\\\\

Evergreen relies on the holding in Visto Corp. v. Smartner Information Systems, Ltd., 2007 WL 218771, at *3-4 (N.D. Cal. Jan. 29, 2007) to support its position that information known only to Met West — but not Evergreen — is relevant to this case. Dkt. 104 at 17. The crux of the issue in that case was whether documents that indisputably were never in plaintiff's possession were nonetheless relevant to the litigation. Id at *3-4. Because the court could find no reason why the documents sought were relevant to the matters at issue and plaintiff failed to offer any explanation to the contrary, the court denied the motion to compel. Id at *4. A different situation is presented here where CEA has offered multiple legal theories to which the sought-after documents could be relevant. And whether or not MetWest ever possessed the documents that it now seeks is not dispositive on the issue of relevancy. The claims asserted in this litigation go to MetWest's awareness and knowledge generally, not simply what they possessed at the time of the investment decision. A further issue is what MetWest *should have* been aware of given its relationship with and proximity to Evergreen's investments. These are all claims which CEA is entitled to discovery of and has shown that the documents it seeks from Evergreen are reasonably calculated to lead to the discovery of admissible evidence.[6]

PRODUCTION OF DOCUMENTS

Having determined that Evergreen possesses documents potentially relevant to the instant litigation that it is required to produce, the court turns to the boundaries of that production. First, RFP 11 seeks documents within a specified date range that also contain certain search terms. The court finds that those terms are sufficiently tailored to lead to discovery of the relevant documents described herein. The parties squabble over where these documents should be found in terms of what custodians may possess responsive material. It is of no consequence to

---

[6] Moreover, it might possibly be the case that Evergreen dropped the Mainsail investment for reasons having nothing to do with the wisdom of the investment itself, e.g. diversification of its portfolio. However, CEA would be entitled to this information, deleterious as it might be to its case. Discovery is not limited to only favorable information to the requesting party.

the court in whose files, emails or computers, these documents reside. The burden is on Evergreen, not CEA, to identify and produce all responsive documents. If the search for electronic documents is to be limited to certain custodians due to the improbability of obtaining relevant information from other persons, or to limit the search to what is reasonably accessible, the burden to identify appropriate custodians is on Evergreen, not CEA. Documents responsive to RFPs 13 and 14 should be similarly produced to the extent they have not already.

The court understands that the primary searches for responsive documents will be conducted electronically. But, as discussed at hearing, Evergreen will also produce hard copy documents in accordance with the following parameters:

> For the time period between June 6, 2006 and June 5, 2008, all formal reports, memoranda, analyses or assessments concerning the Mainsail investment that were in the possession, custody, or control of Evergreen during the same period.

The court will not extend the discovery deadline in order to accommodate the Evergreen production. Accordingly, all responsive documents shall be produced by December 3, 2012.

CONCLUSION

As discussed herein, IT IS HEREBY ORDERED that Evergreen shall produce all documents responsive to RFPs 11, 13 and 14, in accordance with the parameters set forth above, by December 3, 2012.

Dated: November 21, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH9/CEA291.DiscHr'g.Evergrn