UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA EARTHQUAKE AUTHORITY,<br><br>            Plaintiff,<br><br>    v.<br><br>METROPOLITAN WEST SECURITIES, LLC; WACHOVIA BANK, NATIONAL ASSOCIATION; and DOES 1-25,<br><br>            Defendants. | No.  2:10-cv-00291-MCE-CMK<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiff California Earthquake Authority (the "CEA") seeks relief from Defendants Metropolitan West Securities, LLC ("MetWest") and Wells Fargo, N.A., successor by merger to Wachovia Bank, N.A. ("Wachovia") (collectively, "Defendants") for the alleged loss of some $47 million resulting from Defendants' investment on behalf of the CEA in commercial paper issued by Mainsail II LLC ("Mainsail") and that investment's subsequent collapse.  Based on this loss, the CEA asserts claims against Defendants for: (1) breach of contract; (2) breach of fiduciary duty; (3) constructive fraud; and (4) unfair business practices in violation of California Business and Professions Code §§ 17200 et seq.

///

Presently before the Court is the CEA's motion for summary judgment on the issue of the amount of damages which it will be entitled to, should it prevail on its breach of contract claim and/or its breach of fiduciary duty claim. CEA Mot., ECF No. 186. Defendants timely opposed the motion. Def. Opp'n., ECF No. 193. Defendants also filed a cross-motion on the same issue, Def. Mot., ECF No. 194, to which the CEA filed a timely reply. CEA Opp'n, ECF No. 194.

## BACKGROUND[1]

The CEA was created by the California Legislature in the wake of the 1994 Northridge earthquake and the ensuing homeowners insurance crisis. The legislation creating the CEA was passed in 1995, 1995 Cal. Legis. Serv. Ch. 944 (A.B. 13) (approved by Governor October 16, 1995), and the CEA formally commenced operations in 1996. The CEA operates as a public instrumentality on a not-for-profit basis and issues earthquake insurance policies for California homes.

The CEA initially received capital from participating insurance companies in the form of earthquake insurance premiums and invested that money according to the CEA's investment philosophy, which prioritized portfolio safety, liquidity and yield. These priorities were intended to allow CEA's assets to be quickly liquidated and therefore available in the event of an earthquake. CEA later received additional contributions from insurance companies that were added as participants. The CEA also receives revenue through premiums paid on the earthquake insurance policies it issues, as well as through income earned on its invested capital.

It is undisputed that in October 1996, the CEA Governing Board, comprised of California's Governor, Treasurer, and Insurance Commissioner as its three voting members, approved a document entitled "Investment Policies." This document set forth

---

[1] These facts are taken from the CEA's Motion for Summary Adjudication, ECF No. 186, and Defendants' Cross-Motion for Summary Adjudication, ECF No. 194.

specific limitations on CEA investments, including commercial paper investments. The restrictions for commercial paper investments contained therein are as follows:

    1) Maximum maturity:

        Statutory:    180 days

        Policy:    180 days

    2) Maximum par value, total portfolio:

        Statutory:    30% of current portfolio

        Policy:    25%

        a) If over 15% of the portfolio is invested in commercial paper, the dollar-weighted average maturity of the entire portfolio cannot exceed 31 days. Dollar-weighted average maturity means the sum of the amount of each outstanding commercial paper investment multiplied by the days to maturity, divided by the total amount of outstanding commercial paper.

    3) Maximum par value per name:

        Statutory:    10% of outstanding

        Policy:    5%

    4) Maximum par value per maturity

    None

    5) Credit

        a) Rated A1/P1 or equivalent quality as defined by a nationally recognized organization that rates such securities.

        b) Organized and operating with the United States.

        c) Have total assets in excess of five hundred million dollars ($500,000,000).

CEA investments are also governed by California Government Code section 16430. As set forth in the California Insurance Code, "[t]he board [of the CEA] may cause moneys in the fund to be invested and reinvested, from time to time, . . . subject to subdivision (b) of Section 10089.6." Cal. Ins. Code § 10089.22. Section 10089.6 in turn states that "[t]he investments of the authority shall be limited to those securities eligible under Section 16430 of the Government Code." Cal. Ins. Code § 10089.6(b)(1). California

Government Code section 16430 provides guidelines as to "[e]ligible securities for the investment of surplus moneys," and contains certain requirements for investments in commercial paper. Cal. Gov't Code §16430(f)(1). Specifically, section 16430(f) provides:

> Eligible securities for the investment of surplus moneys shall be any of the following:
>
> (f)(1) Commercial paper of "prime" quality as defined by a nationally recognized organization that rates these securities, if the commercial paper is issued by a corporation, trust, or limited liability company that is approved by the Pooled Money Investment Board [("PMB")] as meeting the conditions specified in either subparagraph (A) or subparagraph (B):
>
> (A) Both of the following conditions:
>
>   (i) Organized and operating within the United States.
>
>   (ii) Having total assets in excess of five hundred million dollars ($500,000,000).
>
> (B) Both of the following conditions:
>
>   (i) Organized within the United States as a special purpose corporation, trust, or limited liability company.
>
>   (ii) Having programwide credit enhancements including, but not limited to, overcollateralization, letters of credit, or surety bond.
>
> (2) A purchase of eligible commercial paper may not do any of the following:
>
> (A) Exceed 180 days' maturity.
>
> (B) Represent more than 10 percent of the outstanding paper of an issuing corporation, trust, or limited liability company.
>
> (C) Exceed 30 percent of the resources of an investment program.
>
> (3) At the request of the Pooled Money Investment Board, an investment made pursuant to this subdivision shall be secured by the issuer by depositing with the Treasurer securities authorized by Section 53651 of a market value at least 10 percent in excess of the amount of the state's investment.

Cal. Gov't Code § 16430.

///

The parties dispute to what extent the guidelines covering commercial paper investments contained within the "Investment Policies" adopt the requirements of California Government Code section 16430, and to what extent the Investment Policies reference section 16430.

Prior to the Mainsail transaction at issue, MetWest made thousands of investments for the CEA, including multiple commercial paper investments that were not on the Pooled Money Investment Board's approved list.  All of the investments prior to the Mainsail transaction earned a profit for the CEA.  On August 8, 2007, MetWest invested $63,251,184.84 of the CEA's funds in commercial paper issued by Mainsail.  However, following a freeze of Mainsail's assets on August 20, 2007, Mainsail failed to meet its payment obligations to the CEA.  The CEA received several distribution payments on its Mainsail holdings in September 2008 and November 2012, totaling $16,054.132.55.  Thus, the total lost principal amount is $46,197,052.29.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

1  Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary
2  judgment standard to motion for summary adjudication).
3      In a summary judgment motion, the moving party always bears the initial
4  responsibility of informing the court of the basis for the motion and identifying the
5  portions in the record "which it believes demonstrate the absence of a genuine issue of
6  material fact." Celotex, 477 U.S. at 323.  If the moving party meets its initial
7  responsibility, the burden then shifts to the opposing party to establish that a genuine
8  issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith
9  Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
10 253, 288-89 (1968).
11     In attempting to establish the existence or non-existence of a genuine factual
12 dispute, the party must support its assertion by "citing to particular parts of materials in
13 the record, including depositions, documents, electronically stored information,
14 affidavits[,] or declarations . . . or other materials; or showing that the materials cited do
15 not establish the absence or presence of a genuine dispute, or that an adverse party
16 cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The
17 opposing party must demonstrate that the fact in contention is material, i.e., a fact that
18 might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,
19 Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and
20 Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also
21 demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is
22 such that a reasonable jury could return a verdict for the nonmoving party." Anderson,
23 477 U.S. at 248.  In other words, the judge needs to answer the preliminary question
24 before the evidence is left to the jury of "not whether there is literally no evidence, but
25 whether there is any upon which a jury could properly proceed to find a verdict for the
26 party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251
27 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).
28 As the Supreme Court explained, "[w]hen the moving party has carried its burden under

1 Rule [56(a)], its opponent must do more than simply show that there is some
2 metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  Therefore,
3 "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
4 nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A.  The CEA's Motion

#### 1.  Amount of Damages

The CEA states that "[i]f liability is established under either CEA's breach of contract claim or its breach of fiduciary duty claim, the CEA will be entitled under the law to compensatory damages for the lost principal suffered as a result of the Mainsail investment."  CEA Mot. at 9.  In support of this proposition, the CEA cites to California Civil Code section 3300, which provides:

> [f]or the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.

Cal. Civ. Code § 3300.  The CEA also cites to California Civil Code section 3333, which provides: "[f]or the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have

been anticipated or not." Id. § 3333. The CEA then cites to the indemnity provision in the contract, which, according to the CEA, requires Defendants to indemnify the CEA for any losses or damages, including interest or attorneys' fees, which arise out of a breach of the Agreement by Wachovia, or which are caused by any negligent acts of omissions by Wachovia relating to its duties under the agreement. The CEA thus contends that, should it prevail on either its breach of contract claim or its breach of fiduciary duty claim, it is entitled to compensatory damages in the amount of $46,197,052.29. According to the CEA, while Defendants may seek to dispute the legality or prudence of the investment at issue, Defendants cannot dispute the amount of the lost principal.

      Assuming, without deciding, that there is no dispute as to the amount of the loss, the Court declines to grant summary judgment on this issue. The Court is not required to grant summary judgment even when it appears that there is no genuine issue of material fact. See Fed. R. Civ. P. 56 advisory committee's note on 2007 amendments (citing Kennedy v. Silas Mason Co., 334 U.S. 249, 256–57 (1948)) ("It is established that although there is no discretion to enter summary judgment when there is a genuine issue of material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact."). As the Second Circuit stated in American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theaters, Inc., this Court is

> persuaded that a decision after trial will be the more desirable procedure in the matter. It will serve to bring into sharper focus certain issues of importance which have been obscured by the voluminous affidavits with their statements, counter-statements and alternative positions, and the conflicting conclusions which the parties contend are to be drawn from the multitude of facts and statistics presented.
>
> Under all the circumstances the application of the summary judgment rule is questionable and the Court deems it sound judicial administration to permit a trial for such additional evidence and clarification as may be relevant.

388 F.2d 272, 280 (2d Cir. 1967). Similarly, the Eleventh Circuit has noted that "even in the absence of a factual dispute, a district court has the power to deny summary

8

judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." Lind v. United Parcel Serv., Inc., 254 F.3d 1281, 1285-86 (11th Cir. 2001). Here, the CEA moves for summary judgment as to the damages element of two of their four claims. "Piecemeal adjudication of a portion of [the CEA's] claims without a fully developed record" and without the benefit of the presentation of evidence at trial, "may complicate rather than simplify the ultimate resolution of the dispute between the parties." Helios Int'l S.A.R.L. v. Cantamessa USA, Inc., 12 CIV. 8205, 2014 WL 2119841 (S.D.N.Y. May 21, 2014) (citing Zamoyski v. Fifty–Six Hope Rd. Music Ltd., 718 F. Supp .2d 128, 140 (D. Mass. 2010) (denying motion for summary judgment where underlying legal questions "must be resolved at a later time upon a more fully-developed record"); N. Am. Roofing Servs. v. Nat'l Trust Ins. Co., 2009 WL 5062080, *1 (S.D. Tex. Dec. 16, 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)) (denying summary judgment motion on discretionary grounds; although "[i]t may well turn out that the Court is simply postponing the inevitable interpretation of the documents, however, testimony in this non-jury trial may be helpful to the Court by shedding some additional light on these issues. Moreover, granting [defendant's] Motion at this time would not resolve [plaintiff's] other claims so as to avoid the upcoming trial"); see also Garter-Bare Co. v. Munsingwear, Inc., 650 F.2d 975, 982 (9th Cir. 1980).

It would be unwise to enter summary judgment as to the damages issue alone for the CEA's breach of contract and breach of fiduciary duty claims. The factual issues going to the amount of damages are closely intertwined with claims and factual issues that remain to be litigated. Thus, the Court exercises its discretion to decline to enter partial judgment under Rule 54(b). The CEA's motion for adjudication of damages is therefore denied.

### 2. Prejudgment Interest

The CEA also contends that it is entitled to prejudgment interest on the $46 million loss amount, on two grounds. First, the CEA argues that under the contract, Defendants must indemnify CEA for "any and all losses, costs, liabilities, damages or

9

1  deficiencies, including interest." CEA Mot. at 10-11.  Second, the CEA points to the
2  California Civil Code, which provides the right to recover interest on damages.  See Cal.
3  Civ. Code § 3287.

4      "In diversity cases, state law governs the award of prejudgment interest." Davis &
5  Cox v. Summa Corp., 751 F.2d 1507, 1522 (9th Cir. 1985).  "Under California law,
6  prejudgment interest is governed by Civil Code section 3287 and is recoverable in any
7  action in which damages are certain or 'capable of being made certain by calculation'
8  and the right to recover such damages is vested in the plaintiff on a particular day."
9  Cataphora Inc. v. Parker, 848 F. Supp. 2d 1064, 1072 (N.D. Cal. 2012) (citing Cal. Civ.
10  Code § 3287(a); Cortez v. Purolator Air Filtration Prods. Co., 23 Cal.4th 163, 174-75
11  (2000)).  Under this code section, "the court has no discretion, but must award
12  prejudgment interest upon request, from the first day there exists both a breach and a
13  liquidated claim." Howard v. Am. Nat. Fire Ins. Co., 187 Cal. App. 4th 498, 535 (2010)
14  (quoting N. Oakland Med. Clinic v. Rogers, 65 Cal. App. 4th 824, 828 (1998)).  Courts
15  generally apply a liberal construction in determining whether a claim is certain or
16  liquidated.  Id. (citing Chesapeake Indus., Inc. v. Togova Enter., Inc., 149 Cal. App. 3d
17  901, 907 (1983)).  The test for determining certainty under section 3287(a) is whether
18  the defendant knew the amount of damages owed to the claimant or could have
19  computed that amount from reasonably available information.  Id. (citing Chesapeake
20  Indus., Inc., 149 Cal. App. 3d at 907).  Uncertainty as to the defendant's liability is
21  irrelevant to the determination.  Boehm & Assocs. v. Workers' Comp. Appeals Bd.,
22  76 Cal. App. 4th 513, 517 (1999).  "The certainty required by section 3287(a) is not lost
23  when the existence of liability turns on disputed facts but only when the amount of
24  damages turns on disputed facts." Howard, 187 Cal. App. 4th at 536 (citing Olson v.
25  Cory, 35 Cal. 3d 390, 402 (1983)).

26      "The rationale behind the rule is that where a defendant does not know what
27  amount he owes and cannot ascertain it except by accord or judicial process, he cannot
28  be in default for not paying it." Cataphora, Inc., 848 F. Supp. 2d at 1072

1  (citing Conderback, Inc. v. Standard Oil Co., 239 Cal. App. 2d 664, 689-690 (1966)).
2  "Thus, where the amount of damages cannot be resolved except by verdict or
3  judgment, section 3287(a) prejudgment interest is not appropriate." Id. (citing Wisper
4  Corp. v. Cal. Commerce Bank, 49 Cal. App. 4th 948, 960-61 (1996) (prejudgment
5  interest not awardable on bank's liability for customer damages because portion of
6  damages attributable to bank's negligence not subject to calculation until after trial and
7  determination of relative fault)).  However, "[a] defendant's denial of liability does not
8  make damages uncertain for purposes of Civil Code section 3287." Id. (citing Stein v.
9  S. Cal. Edison Co., 7 Cal. App. 4th 565, 572 (1992); Marine Terminals Corp. v. Paceco,
10 Inc., 145 Cal. App. 3d 991, 995 (1983)).

11        Thus, the CEA contends that the amount of damages is certain, and Defendants
12 owe the CEA prejudgment interest on the initial loss of $62 million, at a rate of ten
13 percent per annum, from the date the loss was incurred until the date the CEA received
14 workout proceeds.  In support of this ten percent figure, the CEA cites to California Civil
15 Code section 3287, which states: "If a contract entered into after January 1, 1986, does
16 not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10
17 percent per annum after a breach." Cal. Civ. Code § 3287.

18        However, California Civil Code section 3288, titled "Interest on damages;
19 noncontractual obligation; discretion of jury," states: "In an action for the breach of an
20 obligation not arising from contract, and in every case of oppression, fraud, or malice,
21 interest may be given, in the discretion of the jury." Cal. Civ. Code § 3288.  This code
22 section applies to determining prejudgment interest for damages for breach of fiduciary
23 duty.  See, e.g., Michelson v. Hamada, 29 Cal. App. 4th 1566, 1586-87 (1994).

24        Because the Court cannot determine what amount of damages, if any, stem from
25 the breach of contract claim, and what amount of damages, if any, stem from the breach
26 of fiduciary duty claim, the Court cannot determine the amount of prejudgment interest, if
27 any, which may be awarded.  Should damages stem from the breach of fiduciary duty
28 claim, the trier of fact, not the Court, is entitled to determine the amount of prejudgment

interest for a breach of fiduciary duty claim.  Accordingly, because the Court finds that a trial on the issue of damages is more appropriate, and because the amount of interest is contingent upon the outcome of the trial, the CEA's motion for summary adjudication as to the prejudgment interest is also denied.

### B. Defendants' Motion

#### A. Damages

Defendants contend that they are entitled to summary judgment on the issue of damages because the CEA has failed to prove with reasonable certainty that it has suffered damages.  Def. Mot. at 10.  Specifically, Defendants argue that the CEA's claim for compensatory damages should be evaluated on a portfolio-wide basis under Modern Portfolio Theory ("MPT"), which reveals that the CEA did not actually suffer a loss, as the portfolio as a whole was profitable.

MPT "focuses on the risk characteristics of each asset not separately, but as it interacts in the portfolio." Nauzer Balsara, Trust Your Broker?: Suitability, Modern Portfolio Theory, and Expert Witnesses, 17 St. Thomas L. Rev. 173, 176 (2004).  ERISA cases apply MPT, pursuant to regulations that require that "the fiduciary shall be required to act as a prudent investment manager under the modern portfolio theory rather than under the common law of trusts standard, which examined each investment with an eye toward its individual riskiness." Laborers Nat. Pension Fund v. N. Trust Quantitative Advisors, Inc., 173 F.3d 313, 317 (5th Cir. 1999) (citing 29 C.F.R. § 2550.404a-1).  Additionally, several district courts and circuit courts have applied MPT to state and federal substantive law, requiring the aggregation of portfolio-wide gains and losses to judge the overall return of an investment.  See Leigh v. Engle, 858 F.2d 361, 368 (7th Cir. 1988); Gulf Grp. Holdings, Inc. v. Coast Asset Mgmt. Corp., 516 F. Supp. 2d 1253, 1260-61 (S.D. Fla. Feb. 13, 2007).

However, the Court is aware of no California or Ninth Circuit case applying MPT to assess an investment in a non-ERISA case, and Defendants cite to none.  Without

///

guidance from the Ninth Circuit, the Court will not apply MPT to the assessment of damages for breach of contract or breach of fiduciary duty claims.

Defendants also contend that "California contract law supports measuring damages on a portfolio wide basis." Def. Mot. at 20. California Civil Code section 3358, titled 'Limitation of damages; exception," provides that, "[e]xcept as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides." Cal. Civ. Code § 3358. California contract law requires as much, in that "[t]he damages recoverable may be subject to deductions for benefits received." 1 B. Witkin Contracts § 922.

However, the promise between Wachovia and the CEA was continuing and the transactions are divisible, and thus each of Defendants' failures to perform under the contract results in a new breach, giving rise to a new cause of action. See, e.g., Trs. for Alaska Laborers-Constr. Indus. Health & Sec. Fund v. Ferrell, 812 F.2d 512 (9th Cir. 1987) (stating that under contract requiring continuing performance, plaintiff may sue for partial breaches as they occur and failure to make monthly payments in contract requiring continuing performance results in new breach each month). Thus, unlike in Smith v. Mady, 146 Cal. App. 3d 129 (1983), which Defendants cite in support of its contention that damages must be offset by benefits received as a result of the breach, in this case there is not a single and unitary breach at issue in which benefits were received and losses sustained—that is, the CEA did not lose money on the Mainsail investment but somehow also profit from the Mainsail investment. While the CEA's contract with Wachovia does not necessarily break down in daily or monthly installments, it is ongoing and contains discrete transactions, each of which may constitute a partial breach which is measurable on its own. The benefits received by other non-compliant investments made by Wachovia are separate transactions, which may not be used to offset the losses sustained in the Mainsail transaction.

///

1	Defendants finally point to California fiduciary law as grounds for its entitlement to
2	summary adjudication.  Under California fiduciary law, "[t]he primary object of an award
3	of damages in a civil action, and the fundamental principle or theory on which it is based,
4	is just compensation or indemnity for the loss or injury sustained by complainant, and no
5	more.  It follows that if the wrongful act of the defendant at once confers a benefit and
6	inflicts an injury, the loss actually caused will be the net result of the act to the plaintiff;
7	and this net result will be the measure of damages." In re De Laveaga's Estate, 50 Cal.
8	2d 480, 488 (1958).  "An allowance for such benefits is not in the nature of recoupment
9	or set-off, but a method of determining the actual damages sustained." Id. at 488-89.
10	These principles, according to Defendants, entitle Defendants to offset the CEA's
11	damages with the gains that the CEA enjoyed under the contract.
12	However, the Restatement (Third) of Trusts provides: "a trustee who is liable for a
13	loss caused by a breach of trust may not reduce the amount of the liability by deducting
14	the amount of a profit that accrued through another and distinct breach of trust; but if the
15	breaches of trust are not separate and distinct, the trustee is accountable only for the net
16	gain or chargeable only with the net loss resulting therefrom."  Restatement (Third) of
17	Trusts § 213.  "In other words, a fiduciary is liable for the total aggregate loss of all
18	breaches of trust and may reduce liability for the net loss of multiple breaches only when
19	such multiple breaches are so related that they do not constitute separate and distinct
20	breaches." Cal. Ironworkers Field Pension Trust v. Loomis Sayles & Co., 259 F.3d
21	1036, 1047 (9th Cir. 2001).  Moreover, "[n]otwithstanding the possibility that a fiduciary
22	may be permitted to balance losses and gains attributable to multiple breaches of trust,
23	the comments to § 213 make clear that a fiduciary may not balance losses attributable to
24	a breach of trust against gains attributable to actions which do not involve a breach of
25	trust." Id. at 1047-48 (emphasis in original).  In Cal. Ironworkers Field Pension Trust, the
26	Ninth Circuit held that "even if losses attributable to the breach are more than balanced
27	by gains resulting from appropriate investments, the plan beneficiaries are entitled to 'the
28	///

greater profits the Plan might have earned if the Trustees had invested in other Plan assets' rather than the impermissible assets." Id.

Multitudinous issues of material fact exist which preclude a grant of summary adjudication on this issue. These issues include whether Defendants acted as a trustee for the CEA, whether the breaches are related such that they do not constitute separate and distinct breaches, the amount of damages from the Mainsail transaction, the amount of damages from other breaches (should they be found to be not separate and related transactions), and the greater profits that the CEA might have earned had Defendants invested in permissible assets rather than in Mainsail (should it be found that Mainsail was an impermissible investment). Moreover, for the reasons stated above, even if there were not genuine issues of material fact, the Court would nonetheless find that summary adjudication of the issue of damages is inappropriate in this case.

Accordingly, Defendants' motion for summary adjudication on the issue of damages is denied.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT:

1. The CEA's Motion for Partial Summary Judgment on Compensatory Damages, ECF No. 186, is DENIED; and
2. Defendants' Motion for Partial Summary Judgment on Compensatory Damages, ECF No. 194, is DENIED.

IT IS SO ORDERED.

Dated: July 2, 2014

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT